THIRD DIVISION

July 20, 2005

No. 1-04-3228

AMY and JOSEPH MITSCH, ) Appeal from the 

                                        ) Circuit Court of 

Plaintiffs-Appellants, ) Cook County.

)

v. ) 

)

GENERAL MOTORS CORPORATION               ) Honorable 

and ROCKENBACH CHEVROLET,            ) Gregory J. Wojkowski,

) Judge Presiding.

Defendants-Appellees. ) 

JUSTICE SOUTH delivered the opinion of the court:

Plaintiffs, Amy and Joseph Mitsch, appeal from an order of the circuit court of Cook County granting defendants', General Motors Corporation (GMC) and Rockenbach Chevrolet (Rockenbach), motion for summary judgment.  Plaintiffs contest the trial court's order as to Rockenbach only and not as to GMC. 

The relevant facts are as follows: On October 7, 2002, plaintiffs purchased a used 2002 GMC Yukon (Yukon) which was manufactured by GMC and sold by Rockenbach, an authorized GMC dealership.  At the time of the purchase, the Yukon had been driven over 36,000 miles.  Prior to taking possession of the vehicle, plaintiffs also purchased GMC's extended service plan.  Rockenbach accepted payment from plaintiffs for this extended service plan. 

The purchase contract for the Yukon contained the following disclaimer: 

" 'AS IS'

THIS USED MOTOR VEHICLE IS SOLD AS IS 
WITHOUT
 ANY WARRANTY  EITHER EXPRESSED OR IMPLIED.  THE PURCHASER WILL BEAR THE 
ENTIRE EXPENSE 
OF REPAIRING OR CORRECTING ANY DEFECTS THAT PRESENTLY EXIST OR THAT MAY OCCUR IN THE VEHICLE."  (Emphasis in original.)       

Plaintiff Joseph Mitsch signed his name directly below this provision and at the bottom of the purchase agreement. 

During a period of approximately 18 months after plaintiffs took possession of the Yukon, they experienced various problems with the vehicle.  They took the Yukon to Rockenbach once for repairs and to another authorized GMC dealership on several other occasions for service.  These dealerships were allegedly unable to repair the vehicle's defects, which included problems with the  suspension, climate control, engine and transmission.  All of the repairs performed by the dealerships on the Yukon were covered under the terms of the GMC service contract.  Due to the frequency of the repairs, plaintiffs lost confidence in the safety and reliability of the Yukon which impaired its value to them.  Consequently, they sought to revoke acceptance of the vehicle in writing under the Magnusson-Moss Warranty-Federal Trade Commission Improvement Act (Warranty Act) (15 U.S.C. § 2301 
et seq.
 (2000)).  

On May 27, 2003, plaintiffs filed a three-count complaint, pursuant to the Warranty Act, alleging breach of written warranty against GMC (count I) and breach of implied warranty of merchantability against GMC and Rockenbach (counts II and III). 

On July 2, 2004, defendants filed a motion for summary judgment in which they asserted that no warranties existed, as a matter of law, between them and plaintiffs.  Defendants asserted that it was uncontroverted that the Yukon's 3-year or 36,000-mile warranty had already expired when plaintiffs purchased the vehicle, that plaintiffs acknowledged signing the purchase agreement which stated that the vehicle was sold "as is - no warranty," and that their purchase of the extended service contract did not preclude a valid disclaimer by defendants of any implied warranties. 

Plaintiffs responded arguing, in relevant part, that there was a genuine issue of material fact as to whether Rockenbach effectively disclaimed the implied warranty of merchantability in the federally mandated "Buyer's Guide."  Plaintiffs attached their affidavits attesting that the only disclaimer they saw was the one contained in the purchase agreement.  

The trial court granted summary judgment in favor of both defendants.  Plaintiffs subsequently filed a motion to reconsider which contained their affidavits attesting that at the time of purchase they did not receive a Buyer's Guide from Rockenbach.  The trial court denied plaintiffs' motion to reconsider.  

On appeal, plaintiffs contend that the trial court erred in granting Rockenbach's motion for summary judgment and raise the following three issues: (1) whether Rockenbach's failure to issue a Buyer's Guide rendered the disclaimer contained in the purchase agreement unenforceable; (2) whether the purchase agreement failed, as a matter of law, to disclaim an implied warranty of merchantability; and (3) whether Rockenbach's sale of GMC's extended service contract prevented any disclaimer by it under the Warranty Act. 

In appeals from summary judgment rulings, we conduct a 
de novo
 review.  
Outboard Marine Corp. v. Liberty Mutual Insurance Co.
, 154 Ill. 2d 90, 102 (1992).  "Summary judgment is appropriate when the pleadings, depositions and affidavits, construed most strongly against the movant and most liberally in favor of the opponent, present no genuine issue of material fact and show that judgment should be granted as a matter of law."  
Golla v. General Motors Corp.
, 167 Ill. 2d 353, 358 (1995).  The party moving for summary judgment must show, as a matter of law, that it is entitled to judgment.  
Murray v. Chicago Youth Center
, 352 Ill. App. 3d 95, 100 (2004).  

When deciding a motion for summary judgment, the court may draw inferences from the undisputed facts.  
Loyola Academy v. S & S Roof Maintenance, Inc.
, 146 Ill. 2d 263, 272 (1992).  
"Where a reasonable person could draw divergent inferences from undisputed facts, summary judgment should be denied."  
Outboard Marine Corp.
, 154 Ill. 2d at 102
.  
The purpose of a summary judgment procedure is not to try a question of fact but to determine whether one exists.  
Golla
, 167 Ill. 2d at 358.  "Summary judgment is a drastic measure and should only be granted if the movant's right to judgment is clear and free from doubt."  
Outboard Marine Corp.
, 154 Ill. 2d at 102. 

The Warranty Act is designed to "improve the adequacy of information available to consumers, prevent deception, and improve competition in the marketing of consumer products." 15 U.S.C. § 2302(a) (2000).  The statute permits a consumer who is damaged by the failure of a supplier, warrantor, or service contractor to comply with any obligation under this title, or under a written warranty, implied warranty, or service contract to bring a cause of action against the warrantor for damages."  15 U.S.C. §2310(d)(1) (2000).   

We initially consider whether the dealership's failure to issue a Buyer's Guide rendered the disclaimer contained in the purchase agreement unenforceable and whether there is a genuine issue of material fact that Rockenbach effectively disclaimed the implied warranty of merchantability in the Buyer's Guide due to the fact that plaintiffs never received the document. 

The Warranty Act and its implementing regulations (16 C.F.R. §455.2 
et seq.  
(2004)) require that before a used vehicle is offered for sale, a seller must prepare, fill in as applicable, and display on the vehicle a "Buyer's Guide."  16 C.F.R. § 455.2(a) (2004).  If the seller offers the used vehicle without any implied warranty, the "as is" box should be marked on the Buyer's Guide.  16 C.F.R. § 455.2(b)(I) (2004).  "The Buyers Guide shall be displayed prominently and conspicuously in any location on a vehicle and in such a fashion that both sides are readily readable."  16 C.F.R. § 455.2(a)(1) (2004).  

A cause of action for violation of this rule is authorized under section 2310(d)(1) of the Warranty Act, which allows a consumer to recover when he or she is "damaged by the failure of the supplier to comply with any obligation under this title."  15 U.S.C. § 2310(d)(1) (2000).  

The measure of damages for a breach of warranty claim is the difference between the value of the property as warranted and the actual value on the day of the breach.  
Valenti v. Mitsubishi Motor Sales of America, Inc.
, 332 Ill. App. 3d 969, 973 (2002).  "While it is not necessary that damages for breach of warranty be calculated with mathematical precision [citation], basic contract theory requires that damages be proved with reasonable certainty and precludes damages based on conjecture or speculation."  
Valenti
, 332 Ill. App. 3d at 973.  

In the instant case, plaintiffs assert that they do not have to demonstrate they were damaged by Rockenbach's failure to issue a Buyer's Guide to recover under the Warranty Act.  We disagree and find that Rockenbach was entitled to judgment, as a matter law, on this claim because it is uncontroverted that plaintiffs were not damaged as a result of the dealership's alleged failure to provide them with a Buyer's Guide.  Plaintiffs both attested that they were aware of the disclaimer contained in the vehicle's purchase agreement which  stated that the vehicle was being sold "as is" without any warranty, either express or implied, and that they would bear the entire expense of repairing or correcting any defects which existed or might occur in the vehicle.  

We further reject plaintiffs' claim that the Buyer's Guide and the purchase contract were potentially in conflict, thereby rendering the disclaimer contained in the purchase agreement unenforceable, because they both attested that they never received a Buyer's Guide from Rockenbach.  Therefore, they could not establish that they were damaged due to either Rockenbach's failure to properly disclaim an implied warranty of merchantability in the Buyer's Guide or as a result of a conflict between the two documents. 

Next, we consider plaintiffs' claim that Rockenbach's disclaimer in the purchase agreement failed, as a matter of law, because it did not contain the term "merchantability."  

We addressed a similar argument in 
Basselen v. General Motors Corp.
, 341 Ill. App. 3d 278 (2003), where the plaintiff filed suit against a car dealer and GMC alleging, among other claims, a breach of implied warranty of merchantability under the Warranty Act.  We found the dealer's disclaimer, which was entirely in capital letters with the term "as is" appearing in conspicuous print in the middle of the form, sufficient to disclaim an implied warranty of merchantability.  As the 
Basselen
 court explained
:     

"In order to effectively disclaim an implied warranty of merchantability, the disclaimer must be conspicuous.  810 ILCS 5/2-316(2) (West 1996).  

The Code defines 'conspicuous' as follows:

 'A term or clause is conspicuous when it is so written that a reasonable person against whom it is to operate ought to have noticed it.  A printed heading in capitals *** is conspicuous.  Language in the body of a form is 'conspicuous' if it is in larger or other contrasting type or color.'  810 ILCS 5/1-201(10) (West  1996). [Citation.]  The Code also provides guidance as to the content of an effective disclaimer.  Section 2-316 states that 'all implied warranties are excluded by expressions like "as is," "with all faults," or other language which in common understanding calls the buyer's attention to the exclusion of warranties and makes plain that there is no implied warranty.' 810 ILCS 5/2-316(3)(a) (West 1996)."  
Basselen
, 341 Ill. App. 3d at 289.     

In the instant case, 
the term "as is" appeared prominently at the top of the disclaimer along with notice that plaintiffs would bear the entire expense of repairing or correcting any defects that currently existed in the vehicle or may develop in the future.  The disclaimer was in all capital letters, the terms "entire expense" and "without" were  underlined, and plaintiff Joseph Mitsch signed his name below that provision.  As in 
Basselen
, we conclude that "as is" was sufficient to disclaim the implied warranty of merchantability and that the prominent placement and size of the disclaimer in the purchase agreement are fatal to plaintiffs' argument. 
  

We further reject plaintiffs' contention that 
Board of Managers of the Village Centre Condominiums Ass'n, Inc. v. Wilmette Partners
, 198 Ill. 2d 132 (2001), controls their claim regarding the validity of Rockenbach's disclaimer of an implied warranty of merchantability.  In 
Board of Managers
, our supreme court considered the language contained in a condominium unit sales agreement and concluded that it did not effectively waive the implied warranty of habitability.  The supreme court specifically noted in rendering its decision "that the implied warranty of habitability is distinct from other warranties by its very nature."  
Board of Managers
, 198 Ill. 2d at 140.  Accordingly, because this case is factually distinguishable, 
Board of Managers
 is inapposite.  
 

Finally, we consider plaintiffs' claim that Rockenbach was prohibited, under section 2308(a) of the Warranty Act (15 U.S.C. §2308(a) (2000))  from disclaiming any implied warranties because it sold them the extended service contract.     

Section 2308(a) provides, in relevant part:

"No supplier may disclaim or modify *** any implied warranty to a consumer with respect to such consumer product if (1) such supplier makes any written warranty to the consumer with respect to such consumer product, or (2) at the time of sale, or within 90 days thereafter, such supplier enters into a service contract with the consumer which applies to such consumer product."  15 U.S.C. §2308(a) (2000).

The Warranty Act defines a service contract as "a contract in writing to perform *** services relating to the maintenance or repair (or both) of a consumer product."  15 U.S.C. §2301(8) (2000). 

In 
Priebe v. Autobarn, Ltd.
, 240 F.3d 584 (7th 
Cir. 2001), a car dealer sold a used car to the plaintiff "as is" and disclaimed all implied warranties despite the fact that it also sold the plaintiff a service contract administered by the Automobile Protection Corporation (APCO).  The Seventh Circuit held that the car dealer's disclaimer of an implied warranty was effective and concluded: 

"[T]he service contract cannot be construed as creating a warranty of merchantability because the service contract bound APCO, not [the car dealer], to repair the Acura.  Priebe has not articulated how [the car dealer] is a party to the contract.  Therefore, we conclude that the service contract with APCO is not sufficient to prevent [the car dealer] from disclaiming implied warranties."  
Priebe
, 240 F.3d at 588. 

Likewise, the service contract in the instant case bound GMC, not Rockenbach, to repair the Yukon.  As in 
Priebe
, plaintiffs have not articulated how Rockenbach is a party to the service contract, beyond the fact that it offered the plan and accepted payment from plaintiffs.  As the trial court correctly concluded, the sale of the extended service contract did not prevent Rockenbach from disclaiming in the purchase agreement any implied warranties. 

For the foregoing reasons, we affirm the trial court's order granting defendants' motion for summary judgment. 

Accordingly, the judgment of the circuit court of Cook County is affirmed.  

Affirmed.

HOFFMAN, J., and ERICKSON, J., concur.