914 N.E.2d 710 (2009)
Benjamin TAGUE, Plaintiff-Appellant,
v.
AUTOBARN MOTORS, LTD., and Ford Motor Company, Defendants-Appellees.
No. 1-07-1220.
Appellate Court of Illinois, First District, Second Division.
September 1, 2009.
*712 Chicago Lemon Law.Com, P.C., Lyndon (Dmitry N. Feofanov, of counsel), for Appellant.
Freeborn & Peters, LLP, Chicago (R. Delacy Peters, Jr., Michael P. Kornak and Gia F. Colunga, of counsel), for Ford Motor Company.
Statland & Valley, Chicago (Jay L. Statland and Lindsay J. Renier, of counsel), for Autobarn Motors, Ltd.
Presiding Justice CUNNINGHAM delivered the modified opinion of the court upon denial of petition for rehearing:
Benjamin Tague (plaintiff), appeals from an order of the circuit court of Cook County which dismissed with prejudice the breach of implied warranty of merchantability claims against Autobarn Motors, Ltd. (Autobarn), and Ford Motor Co. (Ford) under section 2-619 of the Code of Civil Procedure (Code) (735 ILCS 5/2-619 (West 2004)). On appeal, the plaintiff alleges that (1) the trial court erred in dismissing the implied warranty of merchantability claim against Ford; (2) the trial court erred in dismissing the implied warranty of merchantability and revocation claims against Autobarn; and (3) the trial court erred in granting Ford an extension of time in which to file responses to the plaintiff's requests to admit. For the following reasons, we affirm.

BACKGROUND
On May 27, 2004, the plaintiff purchased a 2001 Ford Mustang from Autobarn, a car dealership in Mount Prospect, Illinois. The purchase contract between the plaintiff and Autobarn contained a disclaimer of warranties and indicated that the vehicle was being sold "as is." Although the vehicle was pre-owned, it was still covered by Ford's 2001 "New Vehicle Limited Warranty," which provided bumper-to -bumper *713 coverage for 3 years from the original purchase date (September 7, 2001) or 36,000 miles, whichever occurred earlier. On the date of plaintiff's purchase of the vehicle, the odometer read 19,776 miles. On that same date, the plaintiff also purchased an extended service contract for the vehicle. The extended service contract provided coverage for 4 years or 48,000 miles, whichever occurred first. The extended service contract was offered by Fidelity Warranty Services, Inc. (Fidelity), a service contractor and sold to the plaintiff through Autobarn.
The following January 2005, the vehicle experienced engine problems. At the time, the vehicle's odometer read 34,018 miles. Pursuant to the plaintiff's extended service contract with Fidelity, on January 4, 2005, the plaintiff was authorized to take his vehicle to Carmax Auto for service. The Carmax technician concluded that there was no oil in the vehicle's engine and the absence of oil immobilized the engine causing it to lock up. On January 27, 2005, Fidelity authorized the plaintiff to take the vehicle to Transmission Express for a second opinion. The technician at Transmission Express concluded that the engine failure was due to improper removal and installation of the oil filter which caused a sudden loss of oil and damaged several parts of the engine. It was disclosed that the plaintiff changed the oil in the vehicle himself. The technician recommended that the engine assembly be replaced. Fidelity denied the plaintiff's claim to have the vehicle repaired.
On February 18, 2005, the plaintiff, on his own initiative, took the vehicle to American Technical Inspections to get an additional opinion on the damage to the vehicle. The American Technical technician opined that the vehicle was defective and unmerchantable at the time of manufacture and sale. The technician also opined that the extended warranty claim should not have been denied by Fidelity. The plaintiff then attempted to revoke his acceptance of the vehicle. On April 11, 2005, through his attorney, and pursuant to the Magnuson-Moss WarrantyFederal Trade Commission Improvement (Act) (15 U.S.C. § 2310(d) (2000)), the plaintiff sent a letter addressed to Ford, Autobarn and Fidelity confirming his revocation of acceptance. By that letter, the plaintiff sought a complete reversal of the purchase transaction. The plaintiff requested a return of his down payment and all payments made to date under the finance contract, a "buy-back" of the car, and the cancellation of all of the sales and finance contracts. None of the defendants agreed to return any money to the plaintiff.
On June 29, 2005, the plaintiff filed a three-count complaint in the circuit court of Cook County, pursuant to the Act, alleging breach of implied warranty against Autobarn and Ford (count I), wrongful revocation of acceptance against Autobarn (count II), and breach of service contract against Fidelity (count III).
In response to the plaintiff's complaint, Fidelity filed an answer and an affirmative defense. Fidelity acknowledged that it had a written extended service contract with the plaintiff and asserted that the failure of the vehicle was due in whole or part to the plaintiff's actions, in incorrectly installing an oil filter and driving the car without oil, thereby excluding coverage. Autobarn filed a motion to dismiss counts I and II of the plaintiff's complaint, arguing that the complaint did not allege a cause of action against Autobarn, failed to state a claim upon which relief could be granted, and was barred by an affirmative defense.
Autobarn argued that the plaintiff's extended service contract was with Fidelity and not Autobarn. As such, counts I and II of the plaintiff's complaint were misdirected *714 against Autobarn. Autobarn additionally argued that the plaintiff failed to allege well-pled facts to support his assertion of breach of implied warranty and revocation. Ford filed a motion to dismiss plaintiff's complaint alleging that the breach of implied warranty claim refers to the Ford warranty which expired prior to the occurrence of the alleged defect. Ford argued that because the limited warranty had already expired, the plaintiff's assertion of breach of implied warranties directed against Ford, had also expired.
On September 1, 2005, the plaintiff filed requests to admit directed to Fidelity and Ford. The trial court granted additional time to answer the plaintiff's requests to admit.
At a hearing on January 18, 2006, by written order, the trial court dismissed with prejudice counts I and II of the complaint against Autobarn. The trial court denied Ford's motion to dismiss,[1] but gave Ford leave to file an amended motion. The trial court also denied the plaintiff's motions to deem certain facts admitted against Ford and Fidelity. During that hearing, the plaintiff made an oral motion pursuant to Illinois Supreme Court Rule 304(a) (155 Ill.2d R. 304(a)), for a finding as to Autobarn's dismissal with prejudice, for purposes of appeal. The trial court deferred ruling on the plaintiff's oral motion until the disposition of Ford's amended motion to dismiss.
On January 27, 2006, the plaintiff filed the following: (1) motion to reconsider Autobarn's motion to dismiss the plaintiff's complaint, (2) motion to reconsider the plaintiff's motions to deem admitted, and (3) motion to set a trial date. In the plaintiff's motion to reconsider the court's ruling on Autobarn's motion to dismiss his complaint, the plaintiff alleged that Autobarn was an obligor under the extended service contract, that there was no full and conspicuous disclosure language in the contract, and that he was not provided a "Buyers Guide" during the transaction as required by law. In the plaintiff's motion to reconsider the court's ruling on his motions to deem admitted, the plaintiff alleged that he never received notice of Ford's motion for extension of time in which to respond to his request to admit. Ford's motion to extend time was sent via facsimile on September 28, 2005. It was Ford's intention that the motion be heard on a previously scheduled court date of September 29, 2005. He also argued that Fidelity's similar motion for extension of time which was scheduled to be heard on October 6, 2005, and mailed to him on September 27, 2005, was untimely. The record indicates that although Fidelity's motion was scheduled to be heard on October 6, 2005, both motions were consolidated and heard on September 29, 2005. Thus, the plaintiff argued that he had no notice that those motions would be heard on that date. The plaintiff argued that it was improper for the trial court to grant Fidelity and Ford's motion to extend the time to file their responses under these circumstances.
Ford subsequently filed its amended motion to dismiss the plaintiff's complaint, and on June 20, 2006, the trial court granted Ford's amended motion to dismiss, with prejudice. The trial court also denied the plaintiff's motion to reconsider Autobarn's dismissal from the lawsuit and the plaintiff's motion to deem admitted its requests directed to Ford and Fidelity. The plaintiff's oral motion for a Rule 304(a) finding, as well as the plaintiff's oral motion for *715 leave to file an amended complaint, were also denied. The case against Fidelity continued.
The plaintiff filed a renewed motion for a Rule 304(a) finding, which was denied by the trial court. He then filed a request to admit directed to Fidelity. The trial was set for June 11, 2007. However, on April 25, 2007, the trial court entered an order voluntarily dismissing Fidelity from the lawsuit with prejudice. The order noted that the matter had been settled as between Fidelity and the plaintiff. The order voluntarily dismissing Fidelity was made final and appealable under Supreme Court Rule 304(a) with respect to Autobarn and Ford. On May 3, 2007, the plaintiff timely filed a notice of appeal against Autobarn and Ford.
On appeal, the plaintiff raises the following contentions: (1) the trial court erred in dismissing the implied warranty claim against Ford based on a disclaimer because the plaintiff was never given a written copy of the warranty document; (2) the trial court erred in dismissing the implied warranty and revocation claims against Autobarn, because the Act prohibited Autobarn from disclaiming its implied warranty so that its purported disclaimer was ineffective; and (3) the trial court violated due process when it extended the time in which Ford could respond to the plaintiff's request to admit because Ford never served the plaintiff with a notice of the motion to extend time.

ANALYSIS
A reviewing court applies a de novo standard of review to dismissals under section 2-619 of the Code (735 ILCS 5/2-619 (2004)). A complaint is properly dismissed under that section when an affirmative matter defeats the claim or avoids its legal effect. Villanueva v. Toyota Motor Sales, U.S.A., Inc., 373 Ill.App.3d 800, 311 Ill.Dec. 853, 869 N.E.2d 866 (2007). The reviewing court must determine whether a genuine issue of material fact exists and whether the defendant is entitled to judgment as a matter of law. Villanueva, 373 Ill.App.3d at 802, 311 Ill.Dec. 853, 869 N.E.2d at 868. A reviewing court accepts all well-pled facts as true and draws all reasonable inferences in favor of the plaintiff. Villanueva, 373 Ill.App.3d at 802-03, 311 Ill. Dec. 853, 869 N.E.2d at 868.

Warranty Claims Against Ford
On appeal the plaintiff argues that the trial court erred in granting Ford's motion to dismiss the plaintiff's claim against Ford for breach of implied warranty of merchantability. He contends that the limited warranty that Ford offered was ineffective and, therefore, it could not limit Ford's liability under the Act. We note that initially, in his complaint before the trial court, the plaintiff alleged that he was unable to locate the Ford warranty document that came with his vehicle when he purchased it. However, while his brief before this court asserts that he never received the warranty document, and therefore, it would be unconscionable to bind him to a limitation contained in the document, he does not deny that the vehicle came with a warranty document from Ford. The plaintiff also contends that the warranty fails for other reasons as well.
Since the plaintiff alleged that he was unable to locate the warranty document that came with the vehicle, he did not attach it to his pleadings in the trial court. When Ford filed its first motion to dismiss, attached to the motion was a copy of the warranty booklet that Ford asserts was provided to the plaintiff when the vehicle was purchased. However, Ford failed to attach an affidavit in support of its motion to dismiss in accordance with Supreme Court Rule 191(a) (210 Ill.2d R. 191(a)), and the trial court denied Ford's first motion *716 to dismiss. Ford's amended motion to dismiss, however, did contain an affidavit of a Ford employee who verified that the limited warranty on the vehicle had already expired prior to the date of the plaintiff's claim. The trial court granted Ford's amended motion to dismiss. The plaintiff argues that even if the warranty had already expired, he was still entitled to relief under the Act because the limited warranty that Ford offered was in violation of the Act.
We first address the plaintiff's contention that the trial court erred in allowing Ford to attach its purported warranty document to its amended motion to dismiss. The plaintiff asserts that the affidavit did not comply with Supreme Court Rule 191(a). The plaintiff complains that Ford based its motion to dismiss on a purported copy of a warranty that was not admissible as evidence and therefore, Ford's motion to dismiss should not have been granted.
Rule 191(a) establishes that affidavits submitted in connection with a motion for involuntary dismissal shall be made on the personal knowledge of the affiant; shall set forth with particularity the facts upon which the claim, counterclaim, or defense is based; shall have attached thereto sworn or certified copies of all papers upon which the affiant relies; shall not consist of conclusions but of facts admissible in evidence; and shall affirmatively show that the affiant, if sworn as a witness, can testify competently thereto. 210 Ill.2d R. 191(a).
The plaintiff argues that the affidavit should have set forth the terms of the limitation of the remedies on which Ford relies. However, in a careful review of the document, we find that the information contained in the affidavit was sufficient. Ford attached the affidavit of one of its employees, Eric Weisinger (Weisinger). In Weisinger's affidavit, he explained that as a zone manager for Ford, one of his responsibilities was to review warranty claims, including all factual histories relating to the claims. He set forth his review of the warranty on the plaintiff's vehicle and the vehicle's history. Weisinger then verified that the warranty that covered the plaintiff's vehicle was the same warranty that was attached to Ford's motion to dismiss. With specificity, he detailed the terms of that warranty and opined that Ford's limited warranty on the plaintiff's vehicle had already expired when the engine failure occurred. Weisinger additionally noted that the plaintiff never brought the vehicle to Ford for a diagnosis or repair. It is clear and thus we hold, that the affidavit of Weisinger submitted in support of Ford's motion, did comply with Rule 191(a).
The plaintiff next contends that the trial court's ruling dismissing the plaintiff's claim against Ford based on Ford's limited warranty was unconscionable because he never received the warranty document. However, his signed affidavit that was attached to his complaint does not indicate that he never received the warranty document. The plaintiff makes a number of different assertions regarding Ford's warranty document. In the plaintiff's affidavit attached to his complaint, dated April 20, 2005, the plaintiff states:
"3. I made a search of my papers and am unable to locate the warranty booklet."
On February 19, 2006, the plaintiff signed another affidavit which was attached to the plaintiff's response to Ford's motion to dismiss which stated:
"2. With respect to Ford's warranty, to this day I never saw this document. I never saw any part of the written warranty during the time when I bought the car, and the warranty's specific provisions *717 (except that it was a manufacturer's warranty that covered everything) were never discussed with me."
Yet, in his brief to this court, he now argues that the trial court erred in dismissing the implied warranty against Ford based on a disclaimer in its written warranty, because he alleges that he was never given the warranty document when he bought the car. Thus, the plaintiff makes inconsistent statements regarding whether he actually received the warranty documents. More importantly, in his complaint and his brief to this court, the plaintiff states that he knew that the vehicle was warranted by Ford and that the Ford warranty was part of the basis of the bargain. He does not explain how he gained that knowledge without having received the warranty document or having reviewed it. Also, in his briefs before this court, he indicates for the first time that he never actually received the warranty booklet. The trial court obviously found that the plaintiff was aware of and familiar with the contents of the warranty document. There is nothing in the record to lead us to disagree with the trial court on that point. Therefore, we find that the plaintiff was appropriately held to the limitations contained in the warranty when the trial court granted Ford's motion to dismiss.
The plaintiff next contends that the disclaimer in Ford's warranty booklet does not meet the disclosure requirements set forth in the Act, because the limitation is not conspicuously disclosed. Section 2308(b) of the Act states that implied warranties may be limited to the duration of a written warranty of reasonable duration, if such limitation is conscionable and is set forth in clear and unmistakable language and prominently displayed on the face of the warranty document. 15 U.S.C. § 2308(b) (2000).
The plaintiff argues that the disclaimer limiting the warranty on his vehicle was not conspicuous because it was not separate from the other text on the page. We do not agree. The vehicle's limited warranty language, which is the subject of this dispute, is contained in the Ford warranty document beginning on page four. That page is entitled: "3. The new vehicle limited warranty for your 2001model vehicle." The title is in bold print in a shaded box at the top of the page. The warranty terms for the vehicle clearly begin on the same page. We agree with Ford's statement in its response to plaintiff's petition for rehearing, specifically:
"When the limitation at issue is part of a larger document, like it is here, the [Magnuson-Moss Warranty Act] considers the `face of the warranty' to be `the page in such a document on which the warranty text begins.' 16 C.F.R. § 703.1(h)(2) (2007). Consistent with the [Act] then, the `warranty text' begins on page four, under the set-off heading that is written in larger, boldface type: `The new vehicle limited warranty for your 2001-model vehicle,' and continues on to pages five and six."
Additionally the next page entitled: "Quick Reference: Warranty Coverage," contains a chart which gives a general summary of the warranty coverage provided by Ford. The chart shows "bumper-to-bumper" coverage lasting 3 years or 36,000 miles, whichever occurs first. Having found that the plaintiff was aware of the warranty document and its purpose, we cannot find that the plaintiff was unaware of the limited warranty language that is outlined in the document as it pertains to coverage of his vehicle. Further, we do not find that the limited warranty language was inconspicuous.
Ford's manufacturer's warranty began on September 7, 2001, the date the vehicle *718 was initially purchased. Therefore, the bumper-to-bumper coverage expired on September 7, 2004, or when the vehicle reached 36,000 miles. The vehicle began to have engine problems in January 2005. Thus, the vehicle was no longer covered by Ford's warranty, the coverage having expired on September 7, 2004, prior to the date on which the engine problems began. Accordingly, we hold that the trial court correctly granted Ford's motion to dismiss the plaintiff's implied warranty of merchantability claim, since there was no Ford warranty coverage at the time of the vehicle's engine failure. Norman v. Ford Motor Co., 160 Ill.App.3d 1037, 1041, 112 Ill. Dec. 444, 513 N.E.2d 1053, 1055 (1987).

Warranty Claims Against Autobarn

A. Conspicuous Disclaimer
The plaintiff next argues that Autobarn could not disclaim the implied warranty of merchantability, because the disclaimer in the purchase agreement was not conspicuous.
Under section 2-316(2) of Illinois's Uniform Commercial Code (Code) (810 ILCS 5/2-316(2) (West 2004)), in order to exclude or modify an implied warranty of merchantability, the language must be "conspicuous." Section 2-316(3)(a) states that "unless the circumstances indicate otherwise, all implied warranties are excluded by expressions like "as is, `"with all faults' or other language which in common understanding calls the buyer's attention to the exclusion of warranties and makes plain that there is no implied warranty." 810 ILCS 5/2-316(3)(a) (West 2004). Whether a disclaimer is "conspicuous" is a question of law, which we review de novo. Basselen v. General Motors Corp., 341 Ill.App.3d 278, 289, 275 Ill.Dec. 267, 792 N.E.2d 498, 508 (2003). Section 1-201(10) of the Code defines conspicuous as follows:
"`Conspicuous': A term or clause is conspicuous when it is so written that a reasonable person against whom it is to operate ought to have noticed it. A printed heading in capitals (as: NON-NEGOTIABLE BILL OF LADING) is conspicuous. Language in the body of a form is `conspicuous' if it is in larger or other contrasting type or color. But in a telegram any stated term is `conspicuous.' Whether a term is `conspicuous' or not is for decision by the court." 810 ILCS 5/1-201(10) (West 2004).
On the first page of the purchase contract document between the plaintiff and Autobarn, the lower right-hand corner of the document contains a paragraph entitled "Disclaimer of Warranties." The title appears in bold capital letters. The contents of the paragraph are underlined in their entirety, and more importantly, the para/graph appears directly above the plaintiff's signature on the document. In rejecting the plaintiff's contention, we find that the disclaimer was conspicuous as required by the Act. "A term or clause is conspicuous when it is so written that a reasonable person against whom it is to operate ought to have noticed it." Basselen, 341 Ill.App.3d at 289, 275 Ill.Dec. 267, 792 N.E.2d at 508.

B. Buyers Guide
The plaintiff also asserts that Autobarn did not properly display or provide him with a document referred to as a Buyers Guide. However, our review of the record reveals that the plaintiff's signature appears on the second page of the Buyers Guide. The plaintiff contends that his signature may have been traced onto the document.
We note that Autobarn's verified 2-619 motion set forth that the Buyers Guide was in the vehicle when the plaintiff purchased it. The plaintiff never filed a counteraffidavit *719 in opposition. Consequently, we will not consider the plaintiff's unverified assertion. F.H. Paschen/S.N. Nielsen, Inc. v. Burnham Station, L.L.C., 372 Ill.App.3d 89, 92-93, 309 Ill.Dec. 865, 865 N.E.2d 228-32 (2007). We note that the trial court commented that the Buyers guide was attached as an exhibit to Autobarn's motion to dismiss. Further, the plaintiff did not object to the trial court considering the Buyers guide in its determination. Consequently, it is improper for the plaintiff to raise the issue of the absence of the Buyers Guide on appeal. Landeros v. Equity Property & Development, 321 Ill.App.3d 57, 64-65, 254 Ill.Dec. 351, 747 N.E.2d 391, 399 (2001). We note that the Buyers Guide in question contained conspicuous language advising that the manufacturer's warranty was still in effect and that the "dealership itself assumed no responsibility for any repairs. All warranty coverage comes from the unexpired manufacturer's warranty."
We also note that the plaintiff received and signed the purchase agreement which contained the disclaimer discussed above. The facts of this case are distinguishable from the facts in Razor v. Hyundai Motor America, 222 Ill.2d 75, 305 Ill.Dec. 15, 854 N.E.2d 607 (2006), relied upon by the plaintiff. In Razor, the court refused to enforce a disclaimer based on "the lack of evidence that the warranty, which contained [the] disclaimer of consequential damages, had been made available to the plaintiff at or before the time she signed the sale contract." Razor, 222 Ill.2d at 100-01, 305 Ill.Dec. 15, 854 N.E.2d at 623. For the above stated reasons, we find that Autobarn disclaimed any implied warranties in an appropriate manner.

C. Effect of Service Contract
The plaintiff next contends that Autobarn breached the implied warranty of merchantability under the Act because the Act prohibits sellers from disclaiming implied warranties if they "enter into" a service contract with a buyer. The plaintiff asserts that since he entered into an extended service contract with Autobarn, it cannot now disclaim its implied warranty under the Act. The resolution of this issue turns upon whether Autobarn did in fact enter into an extended service contract with the plaintiff.
Section 2308(a) of the Act provides, in relevant part:
"No supplier may disclaim or modify * * * any implied warranty to a consumer with respect to such consumer product if (1) such supplier makes any written warranty to the consumer with respect to such consumer product, or (2) at the time of sale, or within 90 days thereafter, such supplier enters into a service contract with the consumer which applies to such consumer product." 15 U.S.C. § 2308(a) (2000).
The Act defines a service contract as a contract in writing to perform services relating to the maintenance or repair (or both) of a consumer product. 15 U.S.C. § 2301(8) (2000).
Autobarn argues that it did not actually enter into a contract with the plaintiff, it merely served as a conduit between the plaintiff and Fidelity. Autobarn asserts that the extended service contract that the plaintiff signed obligated Fidelity not Autobarn, to approve and authorize service to the plaintiff's vehicle. In responding to Autobarn's argument, the plaintiff relies on Villanueva v. Toyota Motor Sales, 373 Ill.App.3d 800, 311 Ill.Dec. 853, 869 N.E.2d 866 (2007), to support his argument that he did enter into a service contract with Autobarn. In Villanueva, the plaintiffs purchased a vehicle from Grossinger City Toyota (Grossinger). The purchase agreement contained a disclaimer stating that the vehicle was being sold "as-is." At the *720 same time, the plaintiffs purchased a "Toyota Extra Care" extended service agreement. After Grossinger failed to repair several mechanical problems, the plaintiffs argued that Grossinger breached its implied warranty of merchantability by failing to honor the extended service contract that the plaintiffs had purchased when they bought the vehicle. The appellate court found that there was a genuine issue of material fact regarding whether Grossinger was a party to the agreement because Grossinger identified itself as the issuing and selling dealer and the extended service agreement required the plaintiffs to contact Grossinger for all repair work. Villanueva, 373 Ill.App.3d at 803, 311 Ill. Dec. 853, 869 N.E.2d at 868.
The court in Villanueva distinguished that case from the holdings in Mitsch v. General Motors Corp., 359 Ill.App.3d 99, 295 Ill.Dec. 730, 833 N.E.2d 936 (2005), and Priebe v. Autobarn, Ltd., 240 F.3d 584 (7th Cir.2001). In those cases, the trial court granted and the appellate court affirmed summary judgment in favor of the defendant-dealerships, because neither of the plaintiffs in Mitsch or Priebe articulated how the dealerships were parties to the service contracts, beyond the fact that they had offered the plans and accepted payments from the plaintiffs. In contrast, in Villanueva, the plaintiff did articulate how Grossinger was a party to the extended service contract. Therefore, the appellate court reversed and remanded that case to allow the trial court to determine if Grossinger was indeed a party to the extended service contract. Villanueva, 373 Ill. App.3d at 803, 311 Ill.Dec. 853, 869 N.E.2d at 869.
We find that Mitsch is applicable to the case at bar. In Mitsch, the plaintiffs bought a vehicle from Rockenbach Chevrolet, an authorized General Motors (GMC) dealership. The plaintiff also purchased GMC's extended service plan. On the purchase contract, there was a disclaimer that stated that the vehicle was being sold "as-is" and that the purchaser will bear the entire expense of repairing or correcting any defects that presently exist or that occur in the vehicle. The plaintiff signed his name directly below that provision. Within 18 months after the plaintiff purchased the vehicle, he experienced several problems, which the dealership was unable to repair. The plaintiff asserted that there was a genuine issue of material fact as to whether Rockenbach effectively disclaimed the implied warranty of merchantability in the Buyers Guide which came with the vehicle. On appeal, the plaintiff argued that the failure of the defendants to display the Buyers guide was a violation of the Act entitling the plaintiff to damages. The appellate court rejected the plaintiff's claim, holding that the plaintiff was not entitled to judgment because it was clear that there was no damage caused by the failure to provide a buyers guide with the vehicle because the plaintiff attested that he knew that the vehicle was being sold "as is." The appellate court also held that the disclaimer in the purchase agreement, which contained the term "as is," was sufficient to disclaim the implied warranty of merchantability. The court held that Rockenbach did not enter into an extended service contract with the plaintiff, because GMC, not Rockenbach was obligated to repair the plaintiff's vehicle. Therefore, Rockenbach did not breach the implied warranty of merchantability. The Mitsch case looked to the holding in Priebe, for guidance as to whether the plaintiff entered into a service contract with the defendant.
In Priebe, a case which was brought in federal district court, the Court of Appeals for the Seventh Circuit dealt with an issue similar to the one at bar. In Priebe, the plaintiff bought a vehicle from Autobarn, *721 the same entity involved in this case, and purchased an extended service agreement through a company called APCO. The plaintiff in Priebe admitted that he knew that Autobarn sold him the vehicle "as is," but claimed that Autobarn did not make a valid disclaimer of the implied warranty and therefore had breached the implied warranty of merchantability under the Magnuson-Moss Act. The Court of Appeals for the Seventh Circuit held that the service contract could not be construed as creating a warranty of merchantability because APCO, not Autobarn was bound to repair the vehicle. Priebe, 240 F.3d at 588. The Priebe court further reasoned that the plaintiff did not explain how Autobarn was a party to the service contract, and consequently the court concluded that the service contract with APCO was not sufficient to prevent Autobarn from disclaiming the implied warranties. Priebe, 240 F.3d at 588.
Similarly, in the case at bar, while the plaintiff attempts to articulate how Autobarn is a party to the extended service contract that he had with Fidelity, that argument is unavailing. The plaintiff argues that Autobarn sold him the extended service contract, Autobarn financed the extended service contract, and the vehicle was to be returned to Autobarn for repair. However, in his brief, the plaintiff does not describe the actual content of the extended service contract except to say that it may be ambiguous as to whether Fidelity or Autobarn was obligated to repair the vehicle. In examining the plaintiff's argument, we look to the extended service contract document entitled "Carefree Car Protection." On the first page it lists Autobarn as the selling dealer and at the bottom of the first page in bold, capital letters it lists Fidelity Warranty Services, Inc., as the "Service Company and Administrator." The first paragraph of the second page sets forth the parties to the contract as follows:
"PARTIES TO THIS SERVICE CONTRACT: The following BOLD print appearing throughout this Service Contract has the following meanings: `YOU' and `YOUR' mean the customer named as Service Contract Holder on the front of this Service Contract. `WE', and `OUR' refer to Fidelity Warranty Services, Inc. ("FWS"). In some states, `WE,' `US' and `OUR' refer to the Selling Dealer printed on the front page of this Service Contract. Please refer to the State Amendment section for such exception."
In the State Amendments Section of the plaintiffs extended service contract it states "If this Service Contract is purchased in any of the following states, the following additional provisions will apply." The section for Illinois provides that "the cancellation administration fee will be $50 or 10 percent of the pro-rata refund amount, whichever is less." We note that the section pertaining to Illinois residents does not change the meaning of "WE" or "US" to refer to the selling dealer; rather, it simply discusses applicable cancellation fees.
The plaintiff argues that his vehicle had to be returned exclusively to Autobarn for repairs. The section of the extended service contract that explains how a claim is to be made provides:
"[W]hen repairs are required, if possible, return your vehicle to your selling dealer. If you cannot return your vehicle to your selling dealer, you must telephone FWS to receive instructions."
Thus, contrary to his argument, the plaintiff had an option regarding where to take his vehicle for repairs. With the authorization of Fidelity, some entity other than Autobarn could have performed the repairs. Interestingly, although the plaintiff *722 argues that he was obligated by the extended service contract to take his vehicle to Autobarn for service, when his vehicle developed problems, he never took the vehicle to Autobarn. Instead he received authorization from Fidelity to take the vehicle to CarMax and then later to Transmission Express. We believe the facts are clear that Autobarn did not "enter into a service contract" with the plaintiff. Consequently, section 2308(a)'s provision that the supplier "may not disclaim any implied warranty," does not apply to Autobarn.
We agree with Autobarn that where the supplier simply "makes a service contract available," it is only required to add the "Service Contract" paragraph to the Buyers guide, making the buyer aware that state law implied warranties may be available. See 16 CFR § 455.2(b)(3) (2004). The Buyers guide in this case conspicuously provided: "[x] Service Contract. A service contract is available for an extra charge on this vehicle. If you buy a service contract within 90 days of the time of sale, state law `implied warranties' may give you additional rights." Thus, we agree with the trial court's finding that the service contract at issue was between FWS and the plaintiff, and did not negate the disclaimers of any warranties in the purchasing agreement.

Revocation of Acceptance
The plaintiff also contends that Autobarn wrongfully rejected his revocation of acceptance of the purchase contract. To be entitled to revoke acceptance, the plaintiff must prove that: (1) there was a breach of an implied warranty of merchantability; (2) the defect in the product substantially impaired the product's value to him; (3) the plaintiff reasonably thought the defect could be cured; and (4) it has not been cured. Priebe, 240 F.3d at 588; see also Mydlach v. DaimlerChrysler Corp., 226 Ill.2d 307, 314 Ill.Dec. 760, 875 N.E.2d 1047 (2007). This argument fails because the plaintiff did not establish that Autobarn breached the implied warranty of merchantability or even that there was a material issue as to whether there was a breach. The plaintiff drove the vehicle over 14,000 miles, within the first six months after purchasing it. So contrary to the plaintiff's argument, the car had value to him and he used it for its intended purpose, specifically, driving. Further, the engine was damaged as a result of being run without oil and the facts disclosed that the plaintiff changed his own oil. Thus, Autobarn had sufficient basis to reject the plaintiff's attempt to revoke acceptance. We hold that under these facts, the trial court properly granted Autobarn's motion to dismiss.

Request to Admit
The plaintiff next argues that the trial court erred in granting Ford additional time to respond to the plaintiffs request to admit facts under Supreme Court Rule 216. The plaintiff argues that during a routine presentation of an Autobarn motion, he was surprised when Ford came to court with a motion for extension of time to respond to the plaintiff's request to admit facts. The plaintiff complains the he received no notice of the motion, nor the motion itself, prior to the hearing date. The plaintiff asserts that the copy of a facsimile notice of motion, which was later placed in the court file, was false. The plaintiff signed an affidavit stating that he did not receive the notice of motion by facsimile as Ford alleged. He attests that he checked his facsimile machine on September 27, 2005, and there was no transmission from Ford. The plaintiff initially argues that since he received no notice of the motion, the trial court's September 29, 2005 order granting Ford additional time to respond was void and we should therefore deem his requests admitted. The *723 plaintiff initially filed requests to admit directed at Ford on September 1, 2005. On September 28, 2005, Ford filed a motion for extension of time to respond to plaintiff's first request to admit. The motion indicates that it would be heard on September 29, 2005 and that service was made by facsimile to the plaintiff, Fidelity and Ford.
In addressing the plaintiffs argument, we first look to Supreme Court rules 183 and 216 respectively, which are applicable in the granting of an extension of time and request to admit. Supreme Court Rule 183 provides:
"The court, for good cause shown on motion after notice to the opposite party, may extend the time for filing any pleading or the doing of any act which is required by the rules to be done within a limited period, either before or after the expiration of the time." 134 Ill.2d R. 183.
Supreme Court Rule 216 provides, in pertinent part:
"(a) Request for Admission of Fact. A party may serve on any other party a written request for the admission by the latter of the truth of any specified relevant fact set forth in the request."
Our supreme court recently addressed Supreme Court Rules 216 and 183 in Vision Point of Sale, Inc. v. Haas, 226 Ill.2d 334, 344-45, 314 Ill.Dec. 778, 875 N.E.2d 1065, 1073-74 (2007). The court first held:
"Bright [v. Dicke, 166 Ill.2d 204, 209 Ill.Dec. 735, 652 N.E.2d 275 (1995)] thus stands for the proposition that under the plain language of Rule 183, a trial court in its sound discretion may extend the time to allow a party to comply with the requirements of Rule 216 after the time deadline for compliance has expired if the delinquent party establishes good cause for its noncompliance. As was noted in Bright, the fundamental principles which animate our Rule 183 have long been part of our case law; circuit court must be allowed to exercise their sound discretion over the course and conduct of the pretrial discovery process. Bright, 166 Ill.2d at 208, [209 Ill.Dec. 735, 652 N.E.2d at 276-77]; see also Sohaey, 158 Ill.2d at 380-83[, 199 Ill.Dec. 654, 634 N.E.2d at 709-10]."
The court further held:
"We answer the certified question by holding that in determining whether good cause exists under rule 183 for the grant of an extension of time to remedy an unintentional noncompliance with a procedural requirement, the circuit court may not take into consideration facts and circumstances of record that go beyond the reason for noncompliance. Rather, we reaffirm Bright's holding that the plain language of Rule 183 specifically makes good cause a prerequisite to relief, and that the burden of establishing good cause rests on the party seeking relief under Rule 183. The circuit court has the sound discretion to consider all objective, relevant evidence presented by the delinquent party with respect to why there is good cause for its failure to comply with the original deadline and why an extension of time should not be granted." Vision Point, 226 Ill.2d at 353, 314 Ill.Dec. 778, 875 N.E.2d at 1078.
In his reply brief before this court, the plaintiff acknowledged that the holding in Vision Point changed the line of appellate court cases regarding what constitutes "good cause" and now asks us to remand the case for a hearing to determine good cause. We decline to do so as the record as currently constituted is sufficient for this court to rule on this issue. The trial court allowed the parties to fully argue Ford's motion for extension of time. The plaintiff had the opportunity to vigorously *724 object to Ford's request and to the trial court's decision to allow the motion to be presented and to the court's ruling on the merits of the motion itself. The trial court considered Ford's argument that although the responses to the plaintiff's discovery requests had been drafted, they were awaiting verification and approval by Ford's representative attesting to the accuracy of the responses. Ford asserted that it could not file the responses prior to the needed verification of accuracy. Thus, the trial court found and we agree, that Ford's reason for an extension of time did constitute "good cause." In fact, it would have been inappropriate for Ford to file its answers without proper verification of accuracy. Considering that Ford is a large corporation, the requirement that it locate and obtain accurate verification from the appropriate employee, was clearly essential. The trial court's decision to grant Ford's request for an extension of time was proper and within its sound discretion.
For the foregoing reasons, we affirm the judgment of the circuit court of Cook County.
Affirmed.
QUINN and COLEMAN[2], JJ., concur.
NOTES
[1] Ford's first motion to dismiss was denied without ever reaching the merits, because Ford failed to attach an affidavit to authenticate the limited warranty that was attached to the motion as required by Supreme Court Rule 191(a) (210 Ill.2d R. 191).
[2] Pursuant to Justice Greiman's retirement from the Appellate Court, Justice Coleman has listened to the tape of oral argument and reviewed the briefs and record in order to participate in the disposition of this appeal.