# Illinois Official Reports

## Appellate Court

---

### *Boyd v. Steve's Key City Auto*, 2017 IL App (3d) 160614

---

| | |
|---|---|
| Appellate Court Caption | SHANIKA MONEE BOYD, Plaintiff-Appellee, v. STEVE'S KEY CITY AUTO, Defendant-Appellant. |
| District & No. | Third District<br>Docket No. 3-16-0614 |
| Filed | October 26, 2017 |
| Decision Under Review | Appeal from the Circuit Court of Kankakee County, No. 16-SC-335; the Hon. Ronald J. Gerts, Judge, presiding. |
| Judgment | Reversed. |
| Counsel on Appeal | Nicholas E. Elliott, of Godin, Denton & Elliott, P.C., of Momence, for appellant.<br><br>No brief filed for appellee. |
| Panel | JUSTICE CARTER delivered the judgment of the court, with opinion.<br>Presiding Justice Holdridge and Justice McDade concurred in the judgment and opinion. |

**OPINION**

¶ 1    This appeal arises from a small claims case brought by plaintiff, Shanika Monee Boyd, against defendant, Steve's Key City Auto, regarding her purchase of a used car from defendant. Defendant sold the used car to plaintiff "as-is," and the car broke down and was inoperable a few days later. The trial court awarded plaintiff $1500. Defendant filed a motion to reconsider, which the trial court denied. Defendant appealed. We reverse.

¶ 2                                                        FACTS

¶ 3    On March 16, 2016, plaintiff filed a small claims complaint against defendant, claiming that defendant was "indebted" to her in the sum of "$3,000 for the price of the automobile." At trial plaintiff, who is hearing impaired, testified with the assistance of an unidentified female.

¶ 4    Plaintiff testified that on February 11, 2016, she purchased a 2003 Hyundai Santa Fe (vehicle) from defendant—"Steve's Auto lot." Plaintiff indicated the original price of the vehicle was $2900, but because she "mentioned an ad he had online, he dropped the price to $2600." Plaintiff testified that she had the vehicle for approximately three days when it "broke down" on her way to work. She also testified that the only thing she had done to the car was get the oil changed.

¶ 5    Plaintiff further testified that she tried to get the vehicle fixed "because [defendant] wouldn't take it back." The initial estimate for repairs was $2200. When plaintiff brought the vehicle to a second repair shop, it was determined that the vehicle "needed a full pump, a starter, and a new engine," with an estimated repair cost of $2000. Plaintiff testified that she had the car towed twice "in order to get it looked at to try to get [it] fixed." She also had purchased a new battery (because she thought it was the battery when the car originally stopped working) and had paid $762.96 "for the labor [done] for the timing belt because that's the only thing [she first] knew of." Plaintiff also testified that when she notified defendant her car had broken down, defendant offered her a $2000 credit toward the purchase of another vehicle. Defendant, however, did not have any $2000 cars available, and plaintiff did not have money to pay the difference for a more expensive vehicle over the $2000 credit that defendant was offering to her.

¶ 6    Defendant testified that plaintiff's vehicle actually broke down about nine days after she had purchased it. Defendant initially offered to "trade her out" or "do something," but then he was informed that plaintiff had the oil changed the day before the motor went out. Defendant believed that it was "very common" for oil change places to drain the oil and start a vehicle without putting oil back in, and then they put oil in it and the motor goes out, maybe the next day or maybe the next month so as to prematurely wear out the motor.

¶ 7    Defendant provided the trial court with the Bill of Sale and the Buyer's Guide that had been signed by plaintiff. The bill of sale indicated that plaintiff purchased the vehicle for $2300 ("cash price") and paid $2847 after sales tax and fees (document fee, title fee, plate fee, and transfer fee). The bill of sale also showed that plaintiff had not been charged in relation to a "warranty fee," that plaintiff initialed next to large print that indicated "AS IS—All used cars 'as is' unless indicated here" and also indicated "NON-REFUNDABLE;

AS IS AND SHOWN." Plaintiff also signed the bill of sale, which indicated that she was accepting the terms set forth in the bill of sale.

¶ 8        Plaintiff also signed the "Buyers Guide," which also indicated that she was purchasing the vehicle as-is and without a warranty. The buyers guide provided, in large, bold, capital lettering, on the middle of the page, that the warranty applicable for the vehicle was "AS IS—NO WARRANTY." Next to that, in somewhat smaller print—but still in bold, capital lettering—it indicated, "YOU WILL PAY ALL COSTS FOR ANY REPAIRS." Next to that language, the buyer's guide further indicated, "[t]he dealer assumes no responsibility for any repairs regardless of any oral statements about the vehicle." The plaintiff signed the buyers guide in the middle of the page, in the section indicating "AS IS—NO WARRANTY."

¶ 9        In the buyers guide, below the "as is" section, was a section indicating "WARRANTY" that was left blank. The buyer's guide also indicated that a service contract was available for an extra charge and that if a service contract was bought within 90 days of the sale, then state law "implied warranties" may give the purchaser additional rights. There was no indication that plaintiff purchased a service contract.

¶ 10        Defendant testified that the vehicle had been advertised at the full price with a warranty but the warranty was no longer offered when the price was reduced. He explained, "[w]hen we drop[ ] the price of the vehicles, the first thing that goes is the warranty." Defendant also testified that plaintiff had signed for the purchase of the vehicle "as-is." He indicated, "[w]e sell all vehicles as is, even if you get a warranty." Defendant contended that plaintiff had owned the vehicle for nine days and, in his experience, a faulty oil change can lead to mechanical trouble.

¶ 11        Plaintiff testified that she did not purchase the warranty because it was never mentioned to her by the salesperson and she would have paid more for the vehicle if a warranty had been mentioned. Plaintiff indicated to the court that she was requesting $2000 for car repairs because "[h]e won't even take the vehicle back."

¶ 12        The trial court awarded plaintiff $1500 because, in reviewing the repair estimates, there was no indication that the car's failure resulted from loss of oil. The trial court noted that there was no warranty, "but a car should last more than three days." The trial court acknowledged the vehicle had been sold "as is," but indicated that a vehicle "should last a little longer off the lot than [three days]."

¶ 13        On July 20, 2016, defendant filed a motion to reconsider. In his motion, defendant argued that plaintiff was not entitled to recover under an implied warranty of merchantability because she waived any such warranty at the time of sale. Defendant also argued that plaintiff should not have been awarded a judgment in the amount of $1500 because that amount was not based upon anything presented in evidence. The trial judge indicated, "I'm going to stand in my opinion in spite of the case law," distinguishing the cases defendant cited because the vehicles in those cases did not begin to experience problems until 18 months and 8 months following their purchase. See *Mitsch v. General Motors Corp.*, 359 Ill. App. 3d 99 (2005); *Tague v. Autobarn Motors, Ltd.*, 394 Ill. App. 3d 268 (2009). The trial court indicated that defendant sold a car that "should have never been sold" and "the fact that it broke down in three days shows that it was a vehicle that never should have been sold."

¶ 14        Defendant appealed. We reverse the judgment of the trial court.

ANALYSIS

On appeal, defendant argues that the trial court erred by ruling in favor a plaintiff and by denying its motion to reconsider. Defendant claims it had properly disclaimed all express and implied warranties, arguing that "the lifespan of a used vehicle is irrelevant for warranty disclaimer purposes."

Plaintiff has not filed an appellee's brief in this appeal. Generally, a reviewing court will not act as an advocate for an appellee who fails to file a brief. *First National Bank of Ottawa v. Dillinger*, 386 Ill. App. 3d 393, 395 (2008). However, we can address the merits of this appeal because the record is simple and the alleged errors can easily be decided without the aid of an appellee's brief. *First Capitol Mortgage Corp. v. Talandis Construction Corp.*, 63 Ill. 2d 128, 133 (1976); *First National Bank of Ottawa*, 386 Ill. App. 3d at 395 (when the record is simple and the claimed error can easily be decided without the aid of an appellee's brief, the appellate court should decide the appeal on the merits).

In reviewing the trial court's denial of a motion to reconsider based on an alleged erroneous application of existing law, the standard of review is *de novo*. *O'Shield v. Lakeside Bank*, 335 Ill. App. 3d 834, 838 (2002). In reviewing the trial court's award of damages for repairs of a vehicle that had been sold "as is" and broke down within days of the sale, we must determine whether the defendant/car dealer effectively disclaimed any implied warranties so as to bar plaintiff from recovering damages or from revoking the purchase agreement.

Unless excluded or modified in accordance with section 2-316 of the Uniform Commercial Code (810 ILCS 5/2-316 (West 2014)), "a warranty that the goods shall be merchantable is implied in a contract for their sale if the seller is a merchant with respect to goods of that kind." 810 ILCS 5/2-314(1) (West 2014). For goods to be "merchantable," the goods must meet the following criteria:

"(a) pass without objection in the trade under the contract description; and

(b) in the case of fungible goods, [be] of fair average quality within the description; and

(c) [be] fit for the ordinary purposes for which such goods are used; and

(d) run, within the variations permitted by the agreement, of even kind, quality and quantity within each unit and among all units involved; and

(e) [be] adequately contained, packaged, and labeled as the agreement may require; and

(f) conform to the promises or affirmations of fact made on the container or label if any." 810 ILCS 5/2-314(2) (West 2014).

Section 2-316(2) of the Uniform Commercial Code allows a seller to exclude implied warranties from a contract for the sale of goods. Section 2-316(2) provides:

"(2) Subject to subsection (3), to exclude or modify the implied warranty of merchantability or any part of it the language must mention merchantability and in case of a writing must be conspicuous, and to exclude or modify any implied warranty of fitness the exclusion must be by a writing and conspicuous. Language to exclude all implied warranties of fitness is sufficient if it states, for example, that 'There are no warranties which extend beyond the description on the face hereof.' " 810 ILCS 5/2-316(2) (West 2014).

¶ 21    Subsection 2-316(3) of the Uniform Commercial Code provides:

"(3) Notwithstanding subsection (2)

(a) unless the circumstances indicate otherwise, all implied warranties are excluded by expressions like 'as is', 'with all faults' or other language which in common understanding calls the buyer's attention to the exclusion of warranties and makes plain that there is no implied warranty." 810 ILCS 5/2-316(3) (West 2014).

¶ 22    Subsection (2) of section 2-316 presupposes the existence of an implied warranty unless it is excluded or modified. U.C.C. § 2-316, Comment (Am. Law Inst. 2016). Subsection (2) is "[s]ubject to subsection (3)." 810 ILCS 5/2-316(2) (West 2014). Subsection (3) of section 2-316 states it is applicable "notwithstanding" the requirements of subsection (2), allowing for the exclusion of implied warranties by the expression "as is" because the expression plainly indicates there is no warranty being implied in the sale. 810 ILCS 5/2-316(3)(a) (West 2014); *Clemons v. Nissan North America, Inc.*, 2013 IL App (4th) 120943, ¶ 45 (section 2-316(3) permits disclaimers of implied warranties by an expression like "as is" or other language which makes clear that there is no implied warranty). The sale of goods "as is" or "with all faults" is a "common factual situation[s] in which the circumstances surrounding the transaction are in themselves sufficient to call the buyer's attention to the fact that no implied warranties are made or that a certain implied warranty is being excluded" because such terms are understood to mean that the buyer takes the entire risk as to the quality of the goods involved. U.C.C. § 2-316, Comment (Am. Law Inst. 2016).

¶ 23    In this case, defendant's use of the term "as is" was sufficient to disclaim the implied warranty of merchantability. See 810 ILCS 5/2-316(3)(a) (West 2014); *General Motors Corp.*, 359 Ill. App. 3d at 105 (a dealer's disclaimer in a purchase agreement that the car was being sold "as is" was sufficient to disclaim the implied warranty of merchantability, even where the language of the disclaimer did not contain the term "merchantability"). Therefore, plaintiff has no claim for breach of contract based on a violation of an implied warranty where any such implied warranty was disclaimed.

¶ 24    We also note that there can be no claim for revocation of acceptance of the vehicle. The record shows that defendant refused to take the vehicle back. Section 2-608 of the Uniform Commercial Code provides that a buyer "may revoke his acceptance of a lot or commercial unit whose non-conformity substantially impairs its value to him" where the buyer has accepted it (1) on the reasonable assumption that the non-conformity would be cured and "it has not been seasonably cured" or (2) without the discovery of the non-conformity if his acceptance was reasonably induced by the difficulty of discovery before acceptance or by the seller's assurances. 810 ILCS 5/2-608(1)(a) (West 2014).

¶ 25    Here, there can be no claim for revocation of acceptance based on a "nonconformity" that substantially impaired the value of the vehicle to the plaintiff where the defendant/car dealer effectively disclaimed any implied warranties and sold a used car to plaintiff "as is" because the condition of the vehicle—a used vehicle in "as is" condition—did, in fact, conform with the parties' agreement. But *cf. Blankenship v. Northtown Ford, Inc.*, 95 Ill. App. 3d 303, 305-07 (1981) (holding revocation of acceptance of the purchase of a "new car" was appropriate, even if the dealer had properly disclaimed all implied warranties, where the substantial defective nature of the vehicle clearly impaired its value to the buyer and where the waiver was not sufficiently conspicuous and followed a misleading heading).

¶ 26    Accordingly, we reverse the trial court's order awarding plaintiff $1500.

¶ 27                              CONCLUSION
¶ 28    The judgment of the circuit court of Kankakee County is reversed.

¶ 29    Reversed.