# ILLINOIS OFFICIAL REPORTS

## Appellate Court

---

### *Clemons v. Nissan North America, Inc.*, 2013 IL App (4th) 120943

---

| | |
|---|---|
| Appellate Court Caption | LATESHA CLEMONS, Plaintiff-Appellant, v. NISSAN NORTH AMERICA, INC., Defendant-Appellee. |
| District & No. | Fourth District<br>Docket No. 4-12-0943 |
| Filed | October 11, 2013 |
| Held<br>(*Note: This syllabus constitutes no part of the opinion of the court but has been prepared by the Reporter of Decisions for the convenience of the reader.*) | In an action based on the mechanical problems with a used vehicle plaintiff purchased from an automobile dealership, plaintiff's complaint against the manufacturer of the vehicle was improperly dismissed, notwithstanding the manufacturer's contention that the dealership sold the vehicle to plaintiff "as is" and thereby extinguished the written warranty defendant provided at the time it was sold as a new vehicle, since defendant failed to present any support for its claim that a third party can disclaim a manufacturer's written warranty through "as is" language in a sales contract. |
| Decision Under Review | Appeal from the Circuit Court of Sangamon County, No. 09-L-339; the Hon. John Schmidt, Judge, presiding. |
| Judgment | Reversed and remanded. |

Counsel on       Larry P. Smith (argued) and David Marco, both of SmithMarco, P.C., of
Appeal           Chicago, for appellant.

                 Bruce S. Terlep (argued) and Amy R. Miller, both of Swanson, Martin &
                 Bell, LLP, of Lisle, for appellee.


Panel            JUSTICE KNECHT delivered the judgment of the court, with opinion.
                 Presiding Justice Steigmann and Justice Turner concurred in the
                 judgment and opinion.

**OPINION**

¶ 1      In June 2009, plaintiff, Latesha Clemons, filed a complaint against defendant, Nissan North America, Inc. (Nissan), alleging breach of written warranty pursuant to the Magnuson-Moss Warranty–Federal Trade Commission Improvement Act (Act) (15 U.S.C. §§ 2301 to 2312 (2006)) (count I) and breach of implied warranty (count II). Nissan is an automobile manufacturer. In June 2012, Nissan filed a motion to dismiss pursuant to section 2-619 of the Code of Civil Procedure (Code) (735 ILCS 5/2-619 (West 2010)), alleging the dealer which sold the vehicle disclaimed the warranties through an "as is" clause. In July 2012, the trial court granted Nissan's motion to dismiss.

¶ 2      Plaintiff appeals, arguing the trial court erred in granting Nissan's motion to dismiss because the manufacturer's warranty had not been disclaimed. We reverse and remand.


¶ 3                                I. BACKGROUND

¶ 4      On July 24, 2008, plaintiff purchased a used 2007 Nissan Pathfinder with 12,800 miles for $27,690 from New York Auto Sales, Inc. (New York Auto), an automobile dealership in Aurora, Illinois. Plaintiff began experiencing mechanical problems with the Pathfinder's fuel and exhaust systems and she took it to two Nissan dealerships in the St. Louis, Missouri, metropolitan area for repairs.

¶ 5      In June 2009, plaintiff filed a complaint pursuant to the Act (see 15 U.S.C. § 2310 (2006)) alleging breach of written warranty and breach of implied warranty, seeking damages for the diminution of the Pathfinder's value and attorney fees. Plaintiff filed her complaint in the Cook County circuit court. According to plaintiff, at the time of purchase defendant "issued and supplied to [plaintiff] its written warranty, which included three (3) year or thirty-six thousand (36,000) mile bumper to bumper coverage, as well as other warranties fully outlined in the Warrantor's New Vehicle Warranty booklet." Plaintiff did not attach a copy of the warranty booklet to her complaint.

¶ 6      In August 2009, Nissan filed a motion to transfer venue arguing it maintained an office

in Springfield, Illinois, and venue was proper in Sangamon County. In December 2009, the Cook County circuit court transferred the case to the Sangamon County circuit court.

¶ 7                                                    A. Discovery

¶ 8        In March 2010, the parties exchanged various discovery responses. Nissan admitted it issued a "limited written warranty" for the Pathfinder. Plaintiff submitted several sales documents in response to defendant's request to produce. She submitted two "Buyers Guide" window forms from New York Auto. The first guide (see Appendix A) is the required window form (see 16 C.F.R. § 455.2 (2012)) and contains two large headings reading "AS IS–No Warranty" and "Warranty." The box next to "Warranty" is checked. Below the "Warranty" heading, the document is marked "Limited Warranty." It states the warranty covers 50% of the costs to repair the vehicle's transmission and engine and is for one month or 1,000 miles from the date of purchase, whichever comes first. The second attached "Buyers Guide" is in a different format with New York Auto's name at the top and restates the vehicle is covered by a limited warranty as described in the first guide. This guide is signed and dated. Plaintiff attached a document appearing to be the sales contract. It is signed in plaintiff's name and contains information about her trade-in vehicle, the Pathfinder, financing, and the unpaid balance. The document contains six dark, boxed areas where we cannot read the text.

¶ 9        Plaintiff attached seven invoices for repairs: (1) The invoice dated August 12, 2008, shows the Pathfinder had 14,389 miles and a defective exhaust shield clamp was replaced. (2) The invoice dated October 30, 2008, shows the Pathfinder had 18,117 miles and a fuel pump was replaced. (3) The invoice dated December 16, 2008, shows the Pathfinder had 21,280 miles. It stated the mechanic took the vehicle for a test drive and it died and the fuel pressure dropped to zero. The fuel pump was replaced. (4) The invoice dated December 29, 2008, shows the Pathfinder had 21,780 miles and the voltage at the fuel pump was 9.45 volts rather than 12 volts. The battery was charged. (5) The invoice dated February 4, 2009, shows the Pathfinder had 23,289 miles and the crash zone sensor was replaced. (6) The invoice dated February 12, 2009, shows the Pathfinder had 23,761 miles and a failed air fuel sensor was replaced. (7) The invoice dated July 17, 2009, shows the Pathfinder had 30,284 miles and a defective secondary timing chain and tensioner was replaced. The February 2009 invoices were from Suntrup Automotive Group in St. Louis, Missouri, and the other five invoices were from Auffenberg Nissan in O'Fallon, Illinois.

¶ 10        In December 2010, Nissan filed an answer. Nissan admitted it supplies a "written, limited warranty" at the time of distribution of a new Nissan motor vehicle. Nissan denied New York Auto was an authorized Nissan dealer. Nissan asserted three affirmative defenses, namely (1) damages should be reduced by the diminished value of plaintiff's use; (2) the alleged nonconformity, defect, or condition was rectified and repaired; and (3) damages are limited by the written, limited warranty issued by Nissan.

¶ 11        On February 22, 2011, plaintiff disclosed her expert witness's identity and proposed testimony. See Ill. S. Ct. R. 213(f) (eff. Jan. 1, 2007). The expert was expected to testify the Pathfinder had diminished in value by $4,085. The expert's 20-page vehicle diagnostic report

was attached. The report stated the Pathfinder was experiencing emissions and fuel delivery issues "directly related" to the oxygen and fuel ratio sensors, and because the sensors are not sending correct data the vehicle's computer system "becomes confused as to how much fuel to deliver to the engine system, thus making the vehicle stall at times."

¶ 12                          B. Nissan's Motion To Dismiss

¶ 13       On June 19, 2012, Nissan filed a motion to dismiss pursuant to section 2-619 of the Code. The motion stated "[a]lthough Plaintiff attached only the retail installment contract to the Complaint, and has not produced the sales contract relative to the subject vehicle, [Nissan] has recently obtained a copy of the sales contract, which is attached hereto as Exhibit 2, and learned that the vehicle was actually sold to Plaintiff 'as is,' with no warranty." Nissan argued plaintiff "was informed, in bold language that New York Auto Sales was selling the vehicle with no express warranty and no implied warranty of merchantability. *** Given that the vehicle was sold 'as is,' with no warranty at all as to mechanical condition, Plaintiff cannot meet her burden to prove the existence of, and her compliance with, the terms and conditions of a warranty given to her by the Defendant at the time of sale."

¶ 14       Nissan did not attach an affidavit in support of its motion. It did attach a document from New York Auto dated July 24, 2008. The document does not contain a title but lists plaintiff's personal information, trade-in vehicle, purchase vehicle, and lists the price and balanced owed. (It appears to be the same sales document plaintiff provided in March 2010 but without the darkened areas.) The document states, in bold print, "[T]his vehicle is SOLD AS IS with no warranty as to mechanical condition." The document is unsigned.

¶ 15                     C. The Hearing and the Trial Court's Order

¶ 16       On June 29, 2012, the trial court held a hearing on Nissan's motion to dismiss. Nissan asserted it had been provided the document from New York Auto on June 13, 2012, and accused plaintiff of failing to disclose this document during discovery although dealer documents were requested. Plaintiff responded she had disclosed the document and presented a signed version of the document to the court. The trial court asked if plaintiff could offer proof she had disclosed the document. She could not. The court asked if plaintiff signed the sales contract, and she admitted she had.

¶ 17       Nissan argued the Pathfinder was sold "as is" by New York Auto, and the manufacturer's warranty could not be part of the basis of the bargain. Nissan contended New York Auto had the right to extinguish any preexisting warranty rights and it did so. By selling the vehicle "as is" New York Auto "effectively eviscerated any subsequent legal obligation or responsibility" Nissan had.

¶ 18       Plaintiff responded Nissan's motion was "dilatory" and tantamount to filing a motion to continue as it had been filed mere days before trial. On the merits, plaintiff distinguished Nissan's provided authority on the basis New York Auto was not affiliated with Nissan, was not its agent, and had no authority to disclaim the warranty. Plaintiff informed the trial court Nissan's expert testified at his deposition repairs were carried out on the Pathfinder under

Nissan's warranty.

¶ 19    On July 2, 2012, the trial court issued a written order. The court cited *Mitsch v. General Motors Corp.*, 359 Ill. App. 3d 99, 105, 833 N.E.2d 936, 940 (2005), for the proposition the Uniform Commercial Code requires a "conspicuous" disclaimer for such to be effective. The order, in relevant part, stated:

> "In the instant case, the defendant properly disclaimed both the express and implied warranties. The Plaintiff signed a sales contract disclaiming the vehicle was sold, 'as is with no warranty as to mechanical condition.' [Footnote: There is no dispute Plaintiff signed the sales contract.] The disclaimer language is in a larger type than the previous and subsequent type. The term 'sold as is' is in all capital letters. The Court finds that this disclaimer is in compliance with the law."

The court dismissed plaintiff's complaint.

¶ 20                      D. Plaintiff's Motion To Reconsider and the Warranty

¶ 21    In July 2012, plaintiff filed a motion to reconsider arguing the trial court's reliance on *Mitsch* was error because the Pathfinder was still covered by Nissan's warranty and it is the manufacturer, not the dealership, which is attempting to avoid its warranties. Plaintiff argued Nissan's motion did not meet the requirements of section 2-619(a)(9) of the Code (735 ILCS 5/2-619(a)(9) (West 2012)) because it was not filed within the time for pleading and not supported by an affidavit.

¶ 22    Plaintiff attached a signed copy of the sales contract. (See Appendix B) This copy contains several dark-shaded boxes, but it is possible to read the text. The "as is" language is contained in one of these shaded boxes.

¶ 23    Plaintiff attached the warranty documentation booklet. (See Appendix C) The warranty states as follows: (1) "The basic coverage period is 36 months to 36,000 miles, whichever comes first"; (2) "This warranty is provided to the original and subsequent owner(s) of a Nissan vehicle originally distributed by Nissan which is originally sold by a Nissan authorized Nissan dealership in the United States and which is registered in the U.S. and normally operated in the United States"; and (3) "This warranty is generally transferable from the original 'owner other than a Nissan dealer' (OWNER) to subsequent owners of the vehicle at any time ownership of the vehicle is transferred, without any action on your part" except when the vehicle is registered outside of the United States within six months of purchase. The warranty states it is void if the vehicle is issued a salvage title, including flood title, or is a total loss, such as the cost of repairs exceeded the actual cash value of the vehicle. The warranty does not include language about how the vehicle warranty can be disclaimed.

¶ 24    In September 2012, after a hearing, the trial court denied the motion to reconsider.

¶ 25    This appeal followed.

¶ 26                                    II. ANALYSIS

¶ 27    Plaintiff appeals, arguing the trial court erred in granting defendant's motion to dismiss.

Plaintiff contends defendant did not disclaim its manufacturer's warranty, New York Auto could not disclaim the warranty, and the disclaimer in the sales contract relates only to New York Auto's obligations.

¶ 28                                    A. Standard of Review

¶ 29    Section 2-619 of the Code provides a defendant may file a motion for dismissal on nine different enumerated grounds, including "[t]hat the claim asserted against defendant is barred by other affirmative matter avoiding the legal effect of or defeating the claim." 735 ILCS 5/2-619(a)(9) (West 2012). "Section 2-619(a)'s purpose is to provide litigants with a method of disposing of issues of law and easily proved issues of fact–*relating to the affirmative matter*–early in the litigation." (Emphasis in original.) *Reynolds v. Jimmy John's Enterprises, LLC*, 2013 IL App (4th) 120139, ¶ 30, 988 N.E.2d 984. The section 2-619 movant, for purposes of the motion, "admits all well-pleaded facts and reasonable inferences therefrom." *Snyder v. Heidelberger*, 2011 IL 111052, ¶ 8, 953 N.E.2d 415. In reviewing the motion, "[t]he court must accept as true all well-pleaded facts in plaintiff's complaint and all inferences that may reasonably be drawn in plaintiff's favor" (*Sandholm v. Kuecker*, 2012 IL 111443, ¶ 55, 962 N.E.2d 418) and should only grant the motion "if the plaintiff can prove no set of facts that would support a cause of action" (*Snyder*, 2011 IL 111052, ¶ 8, 953 N.E.2d 415). "In a section 2-619(a) motion, the movant is essentially saying ' "Yes, the complaint was legally sufficient, but an affirmative matter exists that defeats the claim." ' " *Reynolds*, 2013 IL App (4th) 120139, ¶ 31, 988 N.E.2d 984 (quoting *Winters v. Wangler*, 386 Ill. App. 3d 788, 792, 898 N.E.2d 776, 779 (2008)). A section 2-619 dismissal is reviewed *de novo*. *Id.*

¶ 30                                B. Nissan's Section 2-619 Motion

¶ 31    As a threshold matter, we note Nissan's section 2-619 motion presents two important procedural problems, namely, its untimeliness and defendant's failure to comply with Illinois Supreme Court Rule 191 (eff. July 1, 2002). Plaintiff made these arguments before the trial court at the motion hearing and in her motion to reconsider, but here proceeds directly to the merits. In its brief, Nissan suggests, by way of a footnote, plaintiff did not disclose the sales contract because of the "as is" clause and it was plaintiff's "own inexcusable failure to produce the sales contract in the face of an explicit request that caused resolution of this issue to be delayed until shortly before trial." In order to assist the bench and the bar and encourage better motion practice, we briefly address these procedural problems.

¶ 32                                1. *The Motion's Timeliness*

¶ 33    Because a section 2-619 motion admits the legal sufficiency of the complaint, filing such a motion after filing an answer, without requesting leave to withdraw the answer, is procedurally improper. *Gulley v. Noy*, 316 Ill. App. 3d 861, 866, 737 N.E.2d 1115, 1119 (2000); see also Ill. S. Ct. R. 191(a) (eff. July 1, 2002) (section 2-619 motions "must be filed before the last date, if any, set by the trial court for the filing of dispositive motions"). A section 2-619 motion "is intended to be heard and decided before the expense and

inconvenience of litigation has been borne by either party or the trial court." *Gulley*, 316 Ill. App. 3d at 866, 737 N.E.2d at 1119. However, filing an answer does not preclude a section 2-619 motion, even if it is procedurally improper, and a trial court has discretion to consider a section 2-619 motion filed outside the pleadings phase. *Id.*; *Thompson v. Heydemann*, 231 Ill. App. 3d 578, 581, 596 N.E.2d 664, 667 (1992).

¶ 34    Here, Nissan admitted it issued a limited, written warranty for the Pathfinder and filed an answer in December 2010. The parties engaged in discovery for approximately a year and a half, including procuring an expert witness. Then, in June 2012, approximately 20 days before trial, Nissan filed its section 2-619 motion without moving to withdraw its answer. The motion was untimely and procedurally improper. The trial court never considered whether the motion conflicted with Nissan's admissions and answer, nor whether it should have been treated as a summary judgment motion pursuant to section 2-1005 of the Code (735 ILCS 5/2-1005 (West 2010)). See *Reynolds*, 2013 IL App (4th) 120139, ¶ 53, 988 N.E.2d 984 (improper section 2-619 motions may be treated as a summary judgment motion). Plaintiff argued the motion was "dilatory" and tantamount to a motion to continue trial, but she did not argue she was prejudiced by the motion. See *Thompson*, 231 Ill. App. 3d at 581, 596 N.E.2d at 667 (plaintiff must show he or she was prejudiced by defendant's section 2-619 motion filed after answer).

¶ 35                    *2. Nissan's Failure To Submit an Affidavit*

¶ 36    The movant of a motion for involuntary dismissal pursuant to section 2-619 " 'has the burden of proof on the motion, and the concomitant burden of going forward.' " *Reynolds*, 2013 IL App (4th) 120139, ¶ 37, 988 N.E.2d 984 (quoting 4 Richard A. Michael, Illinois Practice § 41:8, at 481 (2d ed. 2011)). "It is well settled that the 'affirmative matter' asserted by the defendant must be apparent on the face of the complaint; otherwise, the motion must be supported by affidavits or certain other evidentiary materials." *Van Meter v. Darien Park District*, 207 Ill. 2d 359, 377, 799 N.E.2d 273, 284 (2003). See *Reynolds*, 2013 IL App (4th) 120139, ¶ 34, 988 N.E.2d 984 (an affirmative matter is something, other than the defendant's version of the facts, which negates the cause of action completely). Illinois Supreme Court Rule 191 (eff. July 1, 2002) requires affidavits in support of section 2-619 motions to set forth with "particularity" the facts upon which the defense is based and attach "sworn or certified copies" of the documents relied upon. See *Robidoux v. Oliphant*, 201 Ill. 2d 324, 339, 775 N.E.2d 987, 996 (2002) (attached-papers requirement must be strictly followed and failure to comply is fatal). Strict compliance with Rule 191(a) is required to insure the trial court is presented with valid evidentiary facts on which to base a decision. *Id.* at 336, 775 N.E.2d at 994. Basic rules of evidence require a party to lay the proper foundation for the introduction of documentary evidence, including its authenticity. *Gardner v. Navistar International Transportation Corp.*, 213 Ill. App. 3d 242, 247, 571 N.E.2d 1107, 1110 (1991); Ill. R. Evid. 901 (eff. Jan. 1, 2011).

¶ 37    Here, Nissan, as the movant, has the burden of proving the existence of an affirmative matter. Nissan asserts the "as is" clause affixed by New York Auto, an unaffiliated car lot, affirmatively bars plaintiff's warranty claim because the disclaimer "eviscerated" its

obligations to plaintiff. As the "as is" clause was not apparent from the complaint, Nissan was required to support its motion by affidavit. Nissan submitted the purported sales contract–an unsigned version nonetheless–without an affidavit authenticating the document or providing a foundation. (In her reply brief, plaintiff argues Nissan has not provided any foundation to rely on the sales contract.) Rather than complying with Rule 191(a), Nissan relied on its bare representations the document was what Nissan purported it to be. Then, at the motion hearing, Nissan accused plaintiff of not producing the document during discovery. The trial court inquired whether this was correct and plaintiff stated it had been disclosed but she did not provide any documentary proof. Plaintiff then retrieved a *signed* copy of the sales contract and presented it to the court. The court then inquired whether this had been produced; again plaintiff did not provide proof. The court asked whether plaintiff had indeed signed the sales contract and she admitted she had. The court's questioning shifted the burden of proof from Nissan to plaintiff. Before the questioning, Nissan had not authenticated the document or shown plaintiff even signed it. Absent plaintiff's admission she signed the sales contract, defendant would not be able to carry its burden on the motion and it should have been denied.

¶ 38    We note if Nissan sought to accuse plaintiff of failing to comply with discovery it should have done so pursuant to Illinois Supreme Court Rule 219(c) (eff. July 1, 2002). This would have given the parties and the trial court an opportunity to properly determine whether the document was disclosed, rather than conducting an impromptu hearing within the motion to dismiss hearing. Our review of the record indicates plaintiff supplied a copy of the sales contract in March 2010 as part of her response to Nissan's production request. This copy in the record (photocopied an unknown number of times) contains dark areas which we cannot read, whereas the copy plaintiff attached to her motion to reconsider contains the dark areas, but it is possible to read the text (the "as is" language being in such a darker area). If Nissan was not able to read the March 2010 copy, it should have requested a clearer copy.

¶ 39                      C. The Warranty Claim

¶ 40    While plaintiff's underlying warranty claim is pursuant to the Act (15 U.S.C. §§ 2301 to 2312 (2006)), we must keep in mind the Uniform Commercial Code (UCC) (810 ILCS 5/1-101 to 13-103 (West 2010)) governs sales of goods, including warranties. Written warranties provided with consumer goods must be examined under the requirements of both the Act and the UCC. *Sorce v. Naperville Jeep Eagle, Inc.*, 309 Ill. App. 3d 313, 322-23, 722 N.E.2d 227, 234 (1999). We turn to the legal framework governing warranties.

¶ 41                   1. *The Magnuson-Moss Warranty Act*

¶ 42    The Act provides a private right of action by a consumer against a supplier or warrantor failing to comply with the Act or the terms of a written warranty. 15 U.S.C. § 2310(d) (2006). An automobile is a "consumer product" covered by the Act. 16 C.F.R. § 700.1(a) (2012). A "warrantor" is "any supplier or other person who gives or offers to give a written warranty or who is or may be obligated under an implied warranty." 15 U.S.C. § 2301(5) (2006). Under the Act, a "written warranty" is:

"(A) any written affirmation of fact or written promise made in connection with the sale of a consumer product by a supplier to a buyer which relates to the nature of the material or workmanship and affirms or promises that such material or workmanship is defect free or will meet a specified level of performance over a specified period of time, or

(B) any undertaking in writing in connection with the sale by a supplier of a consumer product to refund, repair, replace, or take other remedial action with respect to such product in the event that such product fails to meet the specifications set forth in the undertaking." 15 U.S.C. § 2301(6)(A), (B) (2006).

See 16 C.F.R. § 700.3 (2012) (interpreting definition). Under the Act, a written warranty must include a conspicuous designation as a full warranty or a limited warranty. 15 U.S.C. § 2303(a) (2006); 16 C.F.R. § 700.6 (2012) ("Warrantors may include a statement of duration in a limited warranty designation."). Where the warrantor makes a written warranty to the consumer, an implied warranty may not be disclaimed or modified but may be limited in duration to the duration of the written warranty. 15 U.S.C. § 2308(a), (b) (2006). A disclaimer of an implied warranty in violation of the Act is ineffective for state law purposes. 15 U.S.C. § 2308(c) (2006). See generally 15 U.S.C. § 2310(c)(2) (West 2006) (defining "deceptive warranty").

¶ 43                             2. *The Uniform Commercial Code*

¶ 44        Under section 2-313(1)(a) of the UCC "[a]ny affirmation of fact or promise made by the seller to the buyer which relates to the goods and becomes part of the basis of the bargain creates an express warranty that the goods shall conform to the affirmation or promise." 810 ILCS 5/2-313(1)(a) (West 2010); see also *Mydlach v. DaimlerChrysler Corp.*, 226 Ill. 2d 307, 322-23, 875 N.E.2d 1047, 1059 (2007) (treating a repair warranty as a promise to repair rather than an "express warranty" for purposes of the tender-of-delivery rule). An express warranty may be written or oral, and may be created by description, sample, or model. 810 ILCS 5/2-313 (West 2010). Comment 4 to section 2-313 provides:

"In view of the principle that the whole purpose of the law of warranty is to determine what it is that the seller has in essence agreed to sell, the policy is adopted of those cases which refuse except in unusual circumstances to recognize a material deletion of the seller's obligation. Thus, a contract is normally a contract for a sale of something describable and described. A clause generally disclaiming 'all warranties, express or implied' cannot reduce the seller's obligation with respect to such description and therefore cannot be given literal effect under Section 2-316.

This is not intended to mean that the parties, if they consciously desire, cannot make their own bargain as they wish. But in determining what they have agreed upon good faith is a factor and consideration should be given to the fact that the probability is small that a real price is intended to be exchanged for a pseudo-obligation." 810 ILCS Ann. 5/2-313, Uniform Commercial Code Comment 4 (Smith-Hurd 2009).

¶ 45        Section 2-316 of the UCC restricts the exclusion or modification of warranties. 810 ILCS 5/2-316 (West 2010). Under section 2-316(1) of the UCC, a warranty disclaimer inconsistent

with an express warranty is inoperative. 810 ILCS 5/2-316(1) (West 2010). Section 2-316(3)(a) permits disclaimers of implied warranties by expressions like "as is" or other language which "makes plain that there is no *implied* warranty." (Emphasis added.) 810 ILCS 5/2-316(3)(a) (West 2010). Written disclaimers to "exclude or modify the implied warranty of merchantability" must mention merchantability and "be conspicuous." 810 ILCS 5/2-316(2) (West 2010); see 810 ILCS 5/1-201(b)(10) (West 2010) (defining "conspicuous"). Comment 1 to section 2-316 explains:

> "This section is designed principally to deal with those frequent clauses in sales contracts which seek to exclude 'all warranties, express or implied.' It seeks to protect a buyer from unexpected and unbargained language of disclaimer by denying effect to such language when inconsistent with language of express warranty and permitting the exclusion of implied warranties only by conspicuous language or other circumstances which protect the buyer from surprise." 810 ILCS Ann. 5/2-316, Uniform Commercial Code Comment 1 (Smith-Hurd 2009).

¶ 46                              3. *The Parties' Arguments*

¶ 47        Nissan asserts it is "well-settled Illinois law that when a vehicle is sold 'as is,' all applicable warranties are effectively disclaimed and the purchaser is precluded from maintaining a subsequent claim for breach of warranty" and plaintiff's "argument that this ['as is'] language was somehow limited to warranties offered only by New York Auto Sales is not well-founded." In other words, Nissan's position is a third party can disclaim a manufacturer's written warranty through an "as is" clause in a sales contract.

¶ 48        Nissan cites six cases in support but has not provided a single case where a third party disclaimed a manufacturer's written warranty.

¶ 49        In *Basselen v. General Motors Corp.*, 341 Ill. App. 3d 278, 792 N.E.2d 498 (2003), the plaintiffs purchased a new Chevrolet van with a 3-year or 36,000-mile warranty provided by General Motors. *Id.* at 281, 792 N.E.2d at 501. After experiencing difficulty with the van, the plaintiffs sued the manufacturer, General Motors, and the dealer. A " 'new buyer's order' form" stated " 'New Car Factory Limited Warranty–As Is.' " *Id.* at 289, 792 N.E.2d at 508. Before trial, the trial court granted summary judgment against the dealer on an express warranty claim and the case proceeded to trial where a jury returned a verdict against General Motors on the breach of express and implied warranty claims. *Id.* at 280, 792 N.E.2d at 501. The trial court granted a directed verdict in favor of the dealer on the implied-warranty-of-merchantability count. *Id.* The First District upheld the directed verdict because the "as is" disclaimer language in the order form complied with section 1-201 of the UCC (810 ILCS 5/1-201(10) (West 1996)). *Basselen*, 341 Ill. App. 3d at 289, 792 N.E.2d at 508. The appeal in *Basselen* concerned a dealer's implied warranty, not an express warranty, and not the manufacturer's warranty. Further *Basselen* was overruled on other grounds in *Kinkel v. Cingular Wireless, LLC*, 223 Ill. 2d 1, 31, 857 N.E.2d 250, 268-69 (2006), and is of limited precedential value.

¶ 50        In *Tague v. Autobarn Motors, Ltd.*, 394 Ill. App. 3d 268, 271, 914 N.E.2d 710, 712 (2009), the plaintiff purchased a used 2001 Ford Mustang where the sales contract contained

a disclaimer of warranties and indicated the vehicle was sold "as is." At the time of purchase, the Mustang was still covered by Ford's limited warranty, which provided "bumper-to-bumper coverage" for 3 years or 36,000 miles, whichever occurred earlier. *Id.*, 914 N.E.2d at 712-13. Ford moved to dismiss on the basis its limited warranty had expired by the time the Mustang started experiencing problems. *Id.* at 273, 914 N.E.2d at 714. The appellate court upheld the dismissal as Ford's limited warranty expired approximately four months before the Mustang began having problems. *Id.* at 278, 914 N.E.2d at 717-18. The appellate court also held the dealer, Autobarn, properly disclaimed all implied warranties because the disclaimer contained conspicuous language. *Id.* at 279, 914 N.E.2d at 718. Again, *Tague* concerned the dealer's disclaimer of its implied warranty and not a manufacturer's warranty, which had expired by its own terms.

¶ 51    This is the same situation in *Mitsch*, where the plaintiffs purchased a used 2002 GMC Yukon from an authorized GMC dealership. *Mitsch*, 359 Ill. App. 3d at 101, 833 N.E.2d at 937. The purchase contract contained a disclaimer stating the vehicle was sold "as is" and the plaintiffs purchased an extended warranty. *Id.* The vehicle had more than 36,000 miles when sold and General Motors asserted the original warranty had already expired. *Id.* at 102, 833 N.E.2d at 938. The trial court granted the dealer's motion for summary judgment and the plaintiffs appealed whether the purchase agreement disclaimed the dealer's implied warranty of merchantability. *Id.* at 102-03, 833 N.E.2d at 938. The appellate court concluded the "as is" language in the sales contract "was sufficient to disclaim the implied warranty of merchantability." *Id.* at 105, 833 N.E.2d at 940.

¶ 52    Disclaimer of a manufacturer's warranty was not at issue in any of the other cases cited by defendant. See *Lytle v. Roto Lincoln Mercury & Subaru, Inc.*, 167 Ill. App. 3d 508, 517, 521 N.E.2d 201, 206 (1988) (rejecting the argument the dealer adopted the manufacturer's written warranty and could not disclaim its implied warranty of merchantability); *Priebe v. Autobarn, Ltd.*, 240 F.3d 584, 586-88 (7th Cir. 2001) (rejecting the argument the Act prevented the dealer from making a disclaimer of its implied warranty of merchantability because the plaintiff purchased a third-party service contract, to which the dealer was not a party); *Pelc v. Simmons*, 249 Ill. App. 3d 852, 856-57, 620 N.E.2d 12, 15 (1993) (holding the seller's statement he had rebuilt the engine of a 1978 Pontiac Sunbird did not create an express warranty and there was no implied warranty based on a sign in the vehicle's window stating it was " 'sold as is' ").

¶ 53    Like Nissan, plaintiff provided no case where a manufacturer successfully argued it, or a third party, disclaimed its written warranty. See *Rothe v. Maloney Cadillac, Inc.*, 119 Ill. 2d 288, 290-94, 518 N.E.2d 1028, 1029-30 (1988) (addressing manufacturer's implied warranties and noting section 2308(a) of the Act "prohibits a 'supplier' (defined *** as including parties with whom a consumer does not necessarily deal directly) who makes an express warranty from disclaiming any implied warranty to a consumer"); *Larry J. Soldinger Associates, Ltd. v. Aston Martin Lagonda of North America, Inc.*, No. 97 C 7792, 1999 WL 756174, at *3-6 (N.D. Ill. Sept. 13, 1999) (denying the manufacturer's motion for summary judgment with respect to its written warranty because an issue of material fact existed whether the manufacturer had remedied the defects within a reasonable period of time and number of attempts). Plaintiff points out the manufacturer in *Basselen* was held liable on its

written warranty despite the dealer disclaiming its implied warranties. *Basselen* is of limited value as it did not address the verdict against the manufacturer.

¶ 54                                4. *The Warranties Here*

¶ 55    Nissan admitted it provided a written warranty for 3 years or 36,000 miles, whichever came first. The warranty states it covers "any repairs needed to correct defects in materials or workmanship." Nissan has not asserted the written warranty has expired by its own terms, as in *Tague* or *Mitsch*, the warranty was voided pursuant to its terms, such as a salvaged or flood title, or does not cover the repairs made. The evidence in the light most favorable to plaintiff reflects Nissan is the warrantor, it supplied the written warranty for the Pathfinder, and the warranty was effective under its own terms.

¶ 56    There are several problems with Nissan's position a third party can disclaim the written warranty through an "as is" clause contained in a sales contract. We must be careful to distinguish between the two potential warrantors–New York Auto and Nissan–and the two types of potential warranties–express and implied. We need not resolve whether an agency relationship existed between Nissan and New York Auto, and if New York Auto had authority to disclaim Nissan's warranty. These are normally factual questions. *Ioerger v. Halverson Construction Co.*, 232 Ill. 2d 196, 202, 902 N.E.2d 645, 648 (2008) (existence of agency relationship); *Amigo's Inn, Inc. v. License Appeal Comm'n*, 354 Ill. App. 3d 959, 965, 822 N.E.2d 107, 113 (2004) (scope of agent's authority). It is undisputed New York Auto is the alleged disclaiming party and Nissan's manufacturer's warranty is the allegedly disclaimed warranty. Taken in the light most favorable to plaintiff, there can be little dispute Nissan's warranty is a written warranty under the Act. See 15 U.S.C. § 2301(6)(A), (B) (2006). Nissan asserts an owner may terminate Nissan's warranty obligations if the owner so chooses. However, according to the terms of the warranty, it is provided "to the original and subsequent owner(s)" and is "generally transferable" to "subsequent owners of the vehicle at any time ownership of the vehicle is transferred." Federal regulation requires a written warranty to "clearly and conspicuously disclose in a single document in simple and readily understood language *** [t]he identity of the party or parties to whom the written warranty is extended, if the enforceability of the written warranty is limited to the original consumer purchaser or is otherwise limited to persons other than every consumer owner during the term of the warranty." 16 C.F.R. § 701.3(a) (2012). Nissan's warranty contains no provision restricting enforcement of the warranty to less than "every consumer owner during the term of the warranty" or stating an owner can disclaim the warranty for subsequent owners. We decline to read such provisions into Nissan's warranty and read the warranty according to its terms as being extended to and enforceable by all subsequent owners. Regardless of whether Nissan's repair warranty is an "express warranty" as defined by the UCC or a promise to repair (*Mydlach*, 226 Ill. 2d at 323, 875 N.E.2d at 1059), it is obvious Nissan would be unable to unilaterally renege on its promise to repair without subjecting itself to a breach of contract claim. See *Hasek v. DaimlerChrysler Corp.*, 319 Ill. App. 3d 780, 788, 745 N.E.2d 627, 634 (2001) (express warranties are contractual in nature). The Act clearly provides Nissan cannot disclaim an implied warranty where there is a written warranty. 15 U.S.C. § 2308(c) (2006); see also *Sorce*, 309 Ill. App. 3d at 324-25, 722 N.E.2d

-12-

at 235 (summarizing the Act's requirements on disclaimers). Further, the UCC provides a disclaimer inconsistent with an express warranty is ineffective and courts can deny the effect of an "as is" clause where it is inconsistent with a contract's language. 810 ILCS 5/2-316 (West 2010); *Snelten v. Schmidt Implement Co.*, 269 Ill. App. 3d 988, 994, 647 N.E.2d 1071, 1075 (1995) ("when a written contract contains a specific, written, affirmative representation, the inclusion of general 'as is,' 'with all faults' or like language does not, in and of itself, relieve the party making the statement of a duty arising from the statement"). Together, this means if Nissan was the disclaiming party, the "as is" clause would be ineffective because it is inconsistent with its written warranty and promise to repair.

¶ 57　Although Nissan asserts it is "well-settled Illinois law," it has not provided a single case supporting its position a third party can disclaim a manufacturer's written warranty through "as is" language contained in a sales contract. The provided cases address waiver of an *implied* warranty, not an *express* warranty or promise, and do not address a third-party disclaimer. Nissan is correct Illinois law supports waiver of an *implied* warranty through an "as is" clause. We find no support for Nissan's position a third party's "as is" clause voids a manufacturer's written warranty. Nissan's position would be an invitation for automobile manufacturers to engage in misleading warranty claims and do an end run around the Act. See *Mydlach*, 226 Ill. 2d at 325, 875 N.E.2d at 1060 (noting a purpose of the Act is to restrict misleading marketing). The manufacturer could simply escape any obligation to repair, despite its representations or promises, based on the automobile seller's disclaimer contained in the sales contract. Moreover, to reach the conclusion a third party can disclaim a manufacturer's warranty, we would have to interpret the Act and UCC inconsistent with their restrictions on warranty practices and disclaimers. See *McFatridge v. Madigan*, 2013 IL 113676, ¶ 18, 989 N.E.2d 165 ("A court should not depart from the plain language of a statute by reading into it exceptions, limitations, or conditions that the legislature did not intend."). Considering the consumer protections afforded by the Act and UCC in restricting deceptive warranty practices, a third-party disclaimer cannot possibly void a manufacturer's written warranty when the manufacturer's disclaimer would not be given effect. Nissan has not provided a single case where a manufacturer even asserted an "as is" clause in a sales contract vitiated its written warranty and our research has not revealed one. As plaintiff points out, one would suspect General Motors in *Basselen* would have made this argument and not been liable on its express-written warranty if Illinois law supported such a position. See also *Villanueva v. Toyota Motor Sales, U.S.A., Inc.*, 373 Ill. App. 3d 800, 801, 869 N.E.2d 866, 867 (2007) (appeal from dealer's section 2-619 motion to dismiss where the sales contract for a new Toyota minivan contained "as is" language and Toyota did not assert this vitiated the manufacturer's warranty). As Nissan's motion to dismiss is without a basis in law, it must fail.

¶ 58　As an aside, we note Nissan's argument a third party *can* disclaim a manufacturer's warranty does not answer whether the third party *did* disclaim the warranty. At the time of purchase, New York Auto provided plaintiff with a one-month written warranty on the Pathfinder's engine and transmission. The sales contract's language "This vehicle SOLD AS IS with no warranty as to mechanical condition" is inconsistent with New York Auto's warranty. The "as is" clause would be "inoperative" because it is inconsistent and negates

-13-

the express warranty. See 810 ILCS 5/2-316(1) (West 2010). In sum, Nissan's argument not only requires us to twist the Act and UCC to permit a third party to do what a manufacturer could not, it also requires a finding the disclaimer is ineffective against New York Auto but is nevertheless effective for Nissan.

¶ 59 The trial court only analyzed whether the "as is" clause was conspicuous and did not consider whether it was effective under the Act and UCC, it applied to express warranties or promises to repair, or it conflicted with other representations made by New York Auto. The plain language of section 2-316(2) states the conspicuousness requirement applies to disclaimers of *implied* warranties and says nothing of express warranties or promises. 810 ILCS 5/2-316(2) (West 2010). It is unclear if the court failed to draw this distinction or assumed defendant had not made a repair warranty–which would require construing the pleadings in the light most favorable to Nissan. Moreover, the trial court found *Nissan* effectively disclaimed its warranty, whereas the undisputed facts reflect a third party attempted to disclaim the warranty. The trial court dismissed both of plaintiff's counts. This was error and plaintiff's two counts must be reinstated. See *Sorce*, 309 Ill. App. 3d at 326, 722 N.E.2d at 236 ("A cause of action asserted for breach of an express warranty does not extinguish a concurrent cause of action for breach of implied warranties arising from the express warranty."); *Mekertichian v. Mercedes-Benz U.S.A., L.L.C.*, 347 Ill. App. 3d 828, 836, 807 N.E.2d 1165, 1171 (2004).

¶ 60                                            III. CONCLUSION

¶ 61        We reverse the trial court's judgment and remand the cause for further proceedings.


¶ 62        Reversed and remanded.

# BUYERS GUIDE

**IMPORTANT: Spoken promises are difficult to enforce. Ask the dealer to put all promises in writing. Keep this form.**



NISSAN     PATHFINDER     2007     5N1AR18W07C635166

**VEHICLE**     **MAKE**     **MODEL**     **YEAR**     **VIN NUMBER**

13294     Color: BLACK

**DEALER STOCK NUMBER (Optional)**

**WARRANTIES FOR THIS VEHICLE:**

## ☐ AS IS – NO WARRANTY

YOU WILL PAY ALL COSTS FOR ANY REPAIRS. The dealer assumes no responsibility for any repairs regardless of any oral statements about this vehicle.

## ☒ WARRANTY

☐ FULL   ☒ **LIMITED WARRANTY**. The dealer will pay ___50___% of the labor and ___50___% of the parts ofr the covered systems that fail during the warranty period. Ask the dealer for a copy of the warranty document for a full explanation of warranty coverage, exclusions, and the dealer's repair obligations. Under state law, "implied warranties" may give you even more rights.

## SYSTEMS COVERED:    Options    DURATION:

| | | |
|---|---|---|
| REAR AIR CONDITIONIN | POWER SUNROOF | LUGGAGE RACK |
| TOWING/CAMPER PKG | RUNNING BOARDS | AIR CONDITIONING |
| POWER BRAKES | POWER DOOR LOCKS | POWER MIRRORS |
| POWER SEAT | POWER STEERING | POWER WINDOWS |
| 3RD ROW SEAT | AM/FM STEREO | CRUISE CONTROL |
| REMOTE KEYLESS ENTRY | SINGLE COMPACT DISC | 4X4 |
| ALLOY WHEELS | ANTI LOCK BRAKES | DUAL FRONT AIR BAGS |
| FOG LIGHTS | REAR WINDOW DEFOGGER | REAR WINDOW WIPER |

Limited warranty for engine and transmission only, and covers up to 1000 miles or one month from the purchase date whichever comes first. **Ask for details as to coverage, deductibale, price and exclusion.**

 **SERVICE CONTRACT.** A service contract is available at an extra charge o this vehicle. Ask for details as to coverage, deductible, price, and exclusions. If you buy a service contract within 90 days of the time of sale, state law "implied warranties" may give you additional rights.

**PRE-PURCHASE INSPECTION: ASK THE DEALER IF YOU MAY HAVE THIS VEHICLE INSPECTED BY YOUR OWN MECHANIC EITHER ON OR OFF THE LOT.**

**SEE THE BACK OF THIS FORM** for important additional information, including a list of some major defects that may occur in used motor vehicles.



# New York Auto Sales

1530 E. New York St - Aurora, IL 60505 - Ph (630) 898 -6200 Fax (630) 898-0941    Date 07/24/2008

| Purchaser#1 LATESHA N CLEMONS | | Address | | BELLEVILLE IL 62226 |
|---|---|---|---|---|
| S.S. # | Birth Date: | DL# | (W) Ph: | (H) Ph: |
| Purchaser#2 | | Address | | |
| S.S. # | Birth Date: | DL# | (W) Ph: | (H) Ph: |

**No Public Liability, Property or Physical Damage Insurance Issued with this Sale**

## PURCHASE

| Year: 2007 | Make: Nissan | Model: Pathfinder | Color: Black |
|---|---|---|---|
| Stock# 13294 | VIN#: 5N1AR18W07C635166 | | Odometer: 12800 |

## TRADE-IN

| Year: 2002 | Make: Nissan | Model: Pathfinder | Color: Gold |
|---|---|---|---|
| Stock# | VIN#: JN8DR09Y12W711503 | | Odometer 103508 |

Licence Applied For Details

| | | | |
|---|---|---|---|
| No ☐ | Allowance: 12,500.00 | | |
| Yes ☐ | Amount Owing: 12,500.00 | | |
| Transfer ☒ | Net Allowance: 0.00 | | |

| Cash Price | 27,690.00 |
|---|---|
| Sales Tax Amt | 1,070.00 |
| Registration | 80.00 |
| Del. Handling | 95.00 |
| Warranty | 0.00 |
| Gap | 0.00 |

| Previous Deposit | |
|---|---|
| Check On Delivery | 1,000.00 |
| Cash on Delivery | |
| Net Trade Allowance: | 0.00 |

| Total Charges | 28,935.00 |
|---|---|
| Total Credit | 1,000.00 |
| Unpaid Balance | 27,935.00 |

Contract Held By: Wachovia Dealer Services, Inc.

Number of Loan Payments: 72   Wkly ☐   Monthly ☒   2Wkly ☐   Loan Payment Each   538.58   Loan Payment First Due:   08/23/08

### ODOMETER READING

New York Auto Sales, Inc. states that the odometer now reads 12800 (no tenth) miles; and to the best of our knowledge it reflects the actual mileage of the vehicle described above unless one of the following statements are checked.

☐ (1) I hereby certify that to the best of my knowledge the odometer reading reflects the amount of mileage in excess of its mechanical limits.

☐ (2) I hereby certify that the odometer reading is NOT the actual mileage.

Seller's Signature:

Transferee's Signature:

Printed Name: LATESHA N CLEMONS

Transferee's Address: BELLEVILLE IL 62226

I/We approve and accept hereby receipt of copy of bill of sales

Purchaser # 1

Purchaser # 2

The purchaser represents and warrants that he is of legal age, that he has title to and good right to sell and dispose of the used car traded in, described above, that there are no liens, claims, and/or encumbrances thereon, and agrees to furnish good and sufficient title and hereby grants the above company power of attorney to assign and endorse said title for him.

**This vehicle SOLD AS IS with no warranty as to mechanical condition. Esto vehiculo ha sido vendido "en las condiciones mecanicas del mismo."**

**ALL SALES ARE FINAL**

**NO REFUNDS OR EXCHANGES**

In the event of out of state sales, title to the above described vehicle shall retain in the possession of the seller until sold title is endorsed to and received by the purchaser through the U.S. Mail. Payments required to be made hereunder are not acceptable to seller unless made in cash or until conditional payments have cleared purchaser's bank. I, THE PURCHASER HAVE READ AND UNDERSTAND THE RETAIL INSTALLMENT CONTRACT WHICH HAS BEEN SIGNED BY ME, AS WELL AS THIS MEMORANDUM, AND BOTH THE RETAIL INSTALLMENT CONTRACT AND THIS MEMORANDUM OF INSTALLMENT SALE HAVE BEEN FILLED OUT BEFORE I SIGNED THEM AND HAVE RECEIVED A COPY OF BOTH DOCUMENTS AND DO ACKNOWLEDGE DELIVERY OF THE ABOVE DESCRIBED AUTOMOBILE. THESE DOCUMENTS CONSTITUTE THE ENTIRE AGREEMENT BETWEEN US AND I HEREIN STATE THAT NO PROMISES OR REPRESENTATIONS HAVE BEEN MADE TO ME WHICH ARE NOT HEREIN SET FORTH. THERE WILL BE A $300.00 REPO CHARGE AND NEW YORK AUTO SALES INC. WILL NOT BE RESPONSIBLE FOR ANY DAMAGES TO THE CAR OR PERSONAL BELONGINGS. THERE WILL ALSO BE A $15.00 DAILY STORAGE CHARGE. THERE WILL ALSO BE A $10.00 WEEKLY PENALTY FOR LATE PAYMENTS. INTEREST AT THE RATE 24% ANNUALY APPLIES TO PAYMENTS NOT MADE ON OR BEFORE DUE DATES. THE PURCHASER AGREES TO COMPLETE ALL REQUIRED DOCUMENTS WITHIN 24 HOURS OR THE DEALER HAS THE RIGHT TO REPOSSESS THE VEHICLE.

By _____   Seller / Authorized Dealer

## 4    2007 NEW VEHICLE LIMITED WARRANTY

### WHO IS THE WARRANTOR
Nissan[1] warrants all parts of your 2007 Nissan vehicle supplied by Nissan, except for those listed elsewhere under the caption "WHAT IS NOT COVERED."

### APPLICABILITY
- This warranty is provided to the original and subsequent owner(s) of a Nissan vehicle originally distributed by Nissan which is originally sold by a Nissan authorized Nissan dealership in the United States, and which is registered in the U.S. and normally operated in the United States (including Alaska and Hawaii), the United States territories (specifically Guam, Saipan, American Samoa, Puerto Rico and the U.S. Virgin Islands), and Canada.

- This warranty is generally transferable from the original 'owner other than a Nissan dealer' (OWNER) to subsequent owners of the vehicle at any time ownership of the vehicle is transferred, without any action on your part; except that this warranty is not transferable but is instead void if <u>during the first six months after delivery</u> to the original OWNER: (1) ownership of the vehicle is transferred from the original OWNER, <u>and</u> (2) the vehicle is registered outside of the United States.

- Your Nissan vehicle is manufactured to meet U.S. regulations and environmental requirements. With the exception of privately owned vehicles belonging to members of the U.S. military or employees and officers of the United States Government stationed abroad, this warranty does not apply if an otherwise covered vehicle is operated in, or relocated to, a country other than those listed above under this caption, except that it continues to apply if the vehicle is operated in full compliance with its proper use as described in the applicable OWNER'S MANUAL[2] while touring outside of the United States, the U.S. territories or Canada for a period not exceeding sixty (60) consecutive days or sixty (60) days in any one 12 month period. Subject to the transferability restriction described above, this warranty applies to a relocated vehicle which is returned to, and is registered and normally operated in the United States, the U.S. territories or Canada, except for conditions due to the vehicle's foreign operation, e.g., use of inappropriate fuels or other fluids.

---

**LIMITATION OF WARRANTIES AND OTHER WARRANTY TERMS AND STATE LAW RIGHTS**

**EXTRA EXPENSES - LIMITATIONS OF DAMAGES**
**This warranty does not cover incidental or consequential damages such as loss of the use of the vehicle, inconvenience or commercial loss.**

ANY IMPLIED WARRANTY OF MERCHANTABILITY AND FITNESS FOR A PARTICULAR PURPOSE SHALL BE LIMITED TO THE DURATION OF THIS WRITTEN WARRANTY. Some states do not allow the exclusion or limitation of incidental or consequential damages or limitations on how long an implied warranty lasts, so the above limitations or exclusions may not apply to you. This warranty gives you specific legal rights, and you may also have other rights which vary from state to state.

Nissan does not authorize any person to create for it any other warranty, obligation or liability in connection with this vehicle.

---

Nissan makes available to you, and you are specifically required by Federal Law to use BBB AUTO LINE [(800) 955-5100] before exercising rights or seeking remedies under the Federal Magnuson-Moss Warranty Act, 15 U.S.C. §2301, et. seq. You are not required to first use BBB AUTO LINE if you seek remedies not created by Title I of that Federal law, but are required to first use BBB AUTO LINE if you seek remedies created by state law, including your state's lemon law, if applicable state law provides for using a 703 compliant or similar process before filing suit. Please refer to pp. 2-3 of this booklet and the "Supplement to 2007 Nissan Warranty Information Booklet & 2007 Nissan Owner's Manual" for additional information.

---

[1] Nissan indicates Nissan North America, Inc., P.O. Box 685003, Franklin, TN 37068-5003 which distributes Nissan vehicles in the United States.
[2] See the Owner's Manual for information relevant to proper operation of the vehicle, including the recommended fuels and fluids.

### THE WARRANTY BEGINS
The warranty period begins on the date the vehicle is delivered to the first retail buyer or put into use, whichever is earlier.

### FOR HOW LONG AND WHAT IS COVERED
- **BASIC COVERAGE**
  - The basic coverage period is 36 months or 36,000 miles, whichever comes first.
  - This warranty covers any repairs needed to correct defects in materials or workmanship of all parts and components of each new Nissan vehicle supplied by Nissan except for the exclusions or items listed under the caption "WHAT IS NOT COVERED" or, if the part is covered by one of the separate coverages described in the following sections of this warranty, that specific coverage applies instead of the basic coverage.
  - Bedliners will be repaired to commercially acceptable standards subject to the conditions and limitations listed in "WHAT IS NOT COVERED."

- **POWERTRAIN COVERAGE**
  - The Powertrain coverage period is 60 months or 60,000 miles, whichever comes first.
  - This warranty covers any repairs needed to correct defects in materials or workmanship.
  - Powertrain coverage applies to components listed below, supplied by Nissan except for those items listed under the caption "WHAT IS NOT COVERED".

  **ENGINE**
  Cylinder heads and block and all internal parts, rocker covers and oil pan, valve train and front cover, timing chain and tensioner, oil pump, water pump and fuel pump, fuel injectors, intake and exhaust manifolds and supercharger, flywheel, seals, and gaskets.

  **TRANSMISSION AND TRANSAXLE**
  Case and all internal parts, torque converter and converter housing, automatic transmission control module, transfer

---

## 2007 NEW VEHICLE LIMITED WARRANTY    5

case and all internal parts, seals and gaskets, clutch cover and housing, and electronic transmission controls.

**DRIVETRAIN**
Drive shafts, final drive housing and all internal parts, propeller shafts, universal joints, bearings, seals and gaskets.

**RESTRAINT SYSTEM**
Air bags and related electronic control systems.

- **CORROSION COVERAGE (PERFORATION FROM CORROSION)**
Any body sheet metal panel supplied by Nissan found to have developed perforation (rust-through) due to corrosion in normal use is covered for 60 months, regardless of mileage, except for those items listed under "WHAT IS NOT COVERED". No additional rust proofing applications are required. Perforation is a condition in which any body sheet metal panel has corroded from one surface through to another.

- **ORIGINAL EQUIPMENT BATTERY COVERAGE**
The coverage period is 36 months or 36,000 miles, whichever comes first. A defective original equipment battery which is unserviceable within the first 12 months and 36,000 miles will be replaced free of charge. After 12 months but within 24 months and 36,000 miles, you will pay 50% of the replacement battery's suggested retail price plus any applicable taxes. After 24 months but within 36 months and 36,000 miles, you will pay 75% of the replacement battery's suggested retail price plus any applicable taxes. Nissan will pay the rest, including all labor to remove and replace the defective battery.

- **TOWING COVERAGE**
If your vehicle is inoperative due to the failure of a warranted part, towing service to the nearest authorized Nissan dealer is covered for 36 months or 36,000 miles, whichever comes first.

- **ADJUSTMENT COVERAGE**
Service adjustments not usually associated with the replacement of parts, such as wheel alignment, are covered only during the first 12 months or 12,000 miles, whichever comes first.

- **REFRIGERANT RECHARGE ONLY COVERAGE**
Refrigerant recharge not associated with the repair or replacement of a warranted part is covered only during the first 12 months, regardless of the mileage.

### NO CHARGE
Warranty repairs will be made at no charge for parts and/or labor (except for batteries and tires, in which case you may pay certain charges as noted above or as described in the applicable tire warranty found later in this booklet). **Any needed parts replacement will be made using genuine Nissan or Nissan approved new or remanufactured parts.**

### OBTAINING WARRANTY SERVICE
- You must take the vehicle to an authorized Nissan dealer in the United States or Canada during regular business hours at your expense in order to obtain warranty service. The names and addresses of authorized Nissan dealers are listed in telephone directories.

- If you require warranty service outside of the United States (see terms under caption "APPLICABILITY"), contact an authorized Nissan dealer in that country. Note that complaints related to failure to comply with proper use of the vehicle as described in the applicable OWNER'S MANUAL (including the lack of availability or use of proper fuel and fluids), or the vehicle's lack of compliance with local regulations or environmental requirements of any country (other than the U.S., the listed U.S. territories or Canada) are <u>not</u> covered by this warranty.

### MAINTENANCE AND RECORDS
As a condition of this warranty, you are responsible for properly using, maintaining and caring for your vehicle as outlined in your OWNER'S MANUAL and your NISSAN SERVICE & MAINTENANCE GUIDE, and maintaining copies of all maintenance records & receipts for review by Nissan. Failure to do so is likely to result in the denial of warranty coverage.

Evidence of the performance of the required maintenance should be kept and presented as proof of such maintenance in connection with related warranty repairs. To assist you in maintaining appropriate records, the maintenance log located in your NISSAN SERVICE & MAINTENANCE GUIDE can be used along with supporting repair invoices, receipts and other such records.

**(Continued on page 6)**

**(See following page for "WHAT IS NOT COVERED." )**

## *WHAT IS NOT COVERED*

### DAMAGE, FAILURES OR CORROSION DUE TO ACCIDENTS, MISUSE OR ALTERATIONS

This warranty does not cover damage, failures or corrosion resulting from:

- Accident, theft, fire, driving through water (including engine water ingestion) or misuse, which includes racing of any sort whatsoever (Proper use is outlined in your OWNER'S MANUAL).
- Alteration, tampering or improper repair.
- Installation of non-Nissan approved accessories or components.
- Improper installation of any Nissan approved or aftermarket accessory or component.
- Glass breakage, unless resulting from defects in material or workmanship.
- Normal wear and tear, including dings, dents, chips or scratches.

### ALTERED OR UNCERTAIN ODOMETER MILEAGE

This warranty does not cover repair of any vehicle or any part of a vehicle of which the odometer mileage has been altered, or the odometer repaired or replaced and the actual vehicle mileage cannot be correctly and readily determined.

### SALVAGE TITLE

This limited warranty does not apply to any vehicle, and is rendered void if the vehicle is (or ever has been) issued a "salvage" or similar title under any state's law; or has ever been determined to be a "total loss" or equivalent by any insurance company, such as by payment of a cash payment of claim in lieu of repairs because of a determination that the cost of repairs exceeded the actual cash value of the vehicle.

### DAMAGE, FAILURES OR CORROSION FROM ENVIRONMENTAL CONDITIONS

This warranty does not cover damage, failures or corrosion resulting from:

- Stone chipping, chemical fallout (acid rain), tree sap, salt, hail, wind-storm, lightning, flood or other environmental conditions.

- The items listed below are not covered under corrosion coverage (perforation from corrosion).
  - Exhaust system components.
  - Corrosion of outer trim parts, such as moldings. However, corrosion of outer trim parts is warranted for 12 months or 12,500 miles, whichever comes first.
  - Corrosion other than perforation, such as cosmetic or surface corrosion due to defects in materials or workmanship. This is covered under the Basic Coverage of the New Vehicle Limited Warranty.
  - Special bodies or equipment not manufactured or supplied by Nissan.

### DAMAGE, FAILURES OR CORROSION DUE TO LACK OF OR IMPROPER MAINTENANCE

This warranty does not cover damage, failures or corrosion resulting from:

- Lack of performance of proper maintenance services as outlined in your NISSAN SERVICE & MAINTENANCE GUIDE.
- Use of improper or dirty fuel, fluids or lubricants.
- Use of parts not equivalent in quality or design to parts supplied by Nissan.

### MAINTENANCE SERVICE EXPENSE

This warranty does not cover normal maintenance services as specified in your NISSAN SERVICE & MAINTENANCE GUIDE such as engine tune-up; cleaning and polishing; wheel alignment; headlight aiming; replacement of filters, replacement of windshield wiper inserts, replacement of key fob batteries, lubricants, coolant; worn brake shoes, pads, drums and rotors and worn clutch discs.

### SEAT BELTS, TIRES, DROP-IN BEDLINERS AND EMISSION CONTROL SYSTEM

Seat belts, tires, drop-in bedliners and the emission control system are not covered by this warranty, but are covered by separate warranties.

### NISSAN SPRAY-IN BEDLINERS

Nissan Spray-in Bedliners will be repaired to commercially acceptable standards which may include minor appearance differences from the original bedliner.

(See following pages for separate warranties which may apply to your Nissan, such as those covering vehicle emissions, seat belts, and tires.)